**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

```
-----------------------------------------------------------x
                                          :
                                          :
THE COLONIAL BANCGROUP, INC.,             :
                                          :
        Plaintiff,                        :
                                          :
v.                                        :        Case No.  2:10-cv-00198
                                          :
FEDERAL DEPOSIT INSURANCE                 :
CORPORATION, AS RECEIVER FOR              :        JURY TRIAL DEMANDED
COLONIAL BANK,                            :
                                          :
                                          :
        Defendant.                        :
                                          :
-----------------------------------------------------------x
```

## AMENDED COMPLAINT

THE COLONIAL BANCGROUP, INC. ("BancGroup") files this Amended Complaint against the Federal Deposit Insurance Corporation, in its capacity as receiver for Colonial Bank, Montgomery, Alabama (the "FDIC-Receiver"):

## PARTIES

1.      BancGroup is a corporation formed under the laws of the State of Delaware and, prior to the Petition Date (as defined below), was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117.

2.      BancGroup owned Colonial Bank and certain non-banking subsidiaries.

3.      The Federal Deposit Insurance Corporation ("FDIC-Corporate") is the agency charged by law with, among other duties, administering the Federal Deposit Insurance Act and the federal bank deposit insurance system.  The FDIC-Receiver serves in the capacity of receiver for Colonial Bank and is being sued in such capacity herein.  The FDIC-Receiver may be served with this Amended Complaint by service upon counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

1534674_2

## JURISDICTION, VENUE AND GENERAL RESERVATION OF RIGHTS

4.     This action arises under the Constitution and the laws of the United States, including, without limitation, the Federal Deposit Insurance Act ("FDI Act"), 12 U.S.C. § 1811 *et seq.*, as amended.  This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. §§ 1819(b)(2)(A) and 1821(d)(6), and 28 U.S.C. § 1331.

5.     Venue is proper in this Court under 12 U.S.C. § 1821(d)(6) and 28 U.S.C. § 1391(e).

6.     The filing of this Amended Complaint and the Proof of Claim (as defined below) relating thereto is not intended to be and shall not operate as a waiver or release of any rights or claims whatsoever that BancGroup may have, whether against Colonial Bank, the FDIC-Receiver, FDIC-Corporate or any other person or entity and whether such claim can be asserted herein, in BancGroup's bankruptcy case or in any other forum; and the filing of this Amended Complaint and the Proof of Claim is not a waiver of BancGroup's right, to the fullest extent authorized by law, to seek recovery of any claim described herein (or any other claim it may have against Colonial Bank or the FDIC-Receiver) in the bankruptcy case of BancGroup or in any other forum.  Without limiting the generality of the foregoing, BancGroup expressly reserves all rights that it may have to surcharge (under Section 506(c) of the Bankruptcy Code or otherwise) any property of BancGroup's estate in which Colonial Bank or the FDIC-Receiver asserts any security interest or other lien. The purpose of this Amended Complaint is to establish the amount of the Claim of BancGroup in the receivership of Colonial Bank, and BancGroup will seek (and reserves the right to seek) judicial determination of its ownership or other interests in any assets that are or are may be assets of BancGroup's Chapter 11 estate.

7.     The filing of this Compliant and the Proof of Claim is not an election of remedies. BancGroup expressly reserves all of its claims, rights, powers and remedies against (i) Colonial Bank and any other person or entity, including, without limitation, any tenant, sublessee, guarantor or other co-liable persons and (ii) any property in which BancGroup has asserted a security interest, lien or other interest. BancGroup expressly reserves all rights, defenses, objections and remedies with respect to any claim by

- 2 -

Colonial Bank and/or the FDIC-Receiver against BancGroup, including, without limitation, the right of setoff or recoupment.

## **BACKGROUND**

8.      On August 14, 2009 (the "Receivership Date"), Colonial Bank was closed by the Alabama State Banking Department, and the FDIC-Receiver was appointed as receiver for Colonial Bank (the "Receivership").  On the Receivership Date, the FDIC-Receiver asserted dominion and control over not only the books and records of Colonial Bank but also over the books and records of BancGroup and certain of its direct and indirect subsidiaries.

9.      The FDIC-Receiver has continued to withhold and/or cause to be withheld books and records of BancGroup, including documents related to the claims asserted herein, since that time, and has impeded the efforts of BancGroup to access those records for purposes of quantifying and further investigating these claims.

10.      The FDIC-Receiver sold and assigned substantially all of the assets of Colonial Bank to Branch Banking and Trust Company ("BB&T") pursuant to a Purchase and Assumption Agreement dated as of August 14, 2009 among the FDIC-Receiver, FDIC-Corporate and BB&T (the "P&A Agreement").

11.      As a part of the transaction under the P&A Agreement, the FDIC-Receiver took possession of substantially all of the books and records, tangible and electronic, of BancGroup and its subsidiaries (collectively, the "Books and Records") and also transferred to BB&T possession of certain of those Books and Records.  Thereafter, the FDIC-Receiver undertook to obstruct and influence access to and the disposition of such Books and Records through the exercise of certain alleged contractual rights under the P&A Agreement.  These efforts have impeded the efforts of BancGroup to quantify and further investigate its claims.

12.      On August 25, 2009 (the "Petition Date"), BancGroup filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Alabama, Northern Division (the "Bankruptcy Court").

BancGroup continues to manage its business affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

## THE PROOF OF CLAIM

13.     Pursuant to Section 1821(d) of title 12 of the United States Code, the FDIC-Receiver set November 19, 2009, as the last day to file claims in the Receivership that are claims against Colonial Bank and/or the FDIC-Receiver.

14.     On November 19, 2009, BancGroup timely filed a proof of claim in the Receivership (the "Proof of Claim"), describing in detail numerous claims (each a "Claim") against the Receivership estate  to the extent known to BancGroup as of the filing date based on the limited records in its possession.

15.     The Proof of Claim was filed on or about the last day permitted for the filing of claims. Claims filed in the Receivership after November 19, 2009, would have been barred.  Thus, BancGroup had no ability to allow claims to develop further, nor to engage in additional investigation, prior to filing the Proof of Claim.

16.     As a result of the FDIC-Receiver's transfer of the Books and Records to BB&T and restrictions imposed by the FDIC-Receiver on BancGroup's access to the Books and Records, the Proof of Claim was prepared using the limited information available to BancGroup, which, in certain instances, consisted only of summary or incomplete information set forth in the few books and records remaining in BancGroup's possession.

17.     In filing the Proof of Claim, BancGroup reserved all its rights to amend and/or supplement the Proof of Claim at any time and in any respect and to assert any and all other claims of whatever kind or nature that it has, or may have, against the FDIC-Receiver.  BancGroup likewise reserve all rights to amend and/or supplement this Amended Complaint under the Federal Rules of Civil Procedure.

18.     The Proof of Claim included both a liquidated claim and numerous contingent and/or unliquidated claims as more fully described below.

19.    On January 6, 2010, the FDIC-Receiver denied the Proof of Claim (the "Denial").  A copy of the Denial is attached hereto as **Exhibit A**.

20.    The Denial only addressed one of the numerous Claims included in the Proof of Claim, but disallowed all of the Claims.

21.    The Denial was based on the purported lack of "sufficient supporting documentation."  This alleged lack of supporting documentation was due solely to the FDIC-Receiver's seizure of BancGroup books and records and its refusal to allow BancGroup access to those records.

22.    The FDIC-Receiver's denial of the Proof of Claim triggered a 60-day period for the filing of a judicial challenge to the Denial.  As a result, BancGroup can no longer delay the filing of this action.

23.    The Proof of Claim included the following discrete claims:

### (Intercompany Receivables)

24.    Prior to the Receivership Date, BancGroup incurred expenses on behalf of Colonial Bank, which expenses resulted in intercompany accounts owed by Colonial Bank to BancGroup and are reflected as such in the books and records of BancGroup and Colonial Bank (the "Intercompany Receivable Claims").

25.    The Intercompany Receivable Claims arose out of transactions in the ordinary course of business between the parties.

26.    As a result of these transactions, Colonial Bank was indebted to BancGroup as of the Receivership Date in an amount not less than $514,420.78.

### (Taxes)

27.    BancGroup and Colonial Bank, and certain other direct and indirect subsidiaries of BancGroup and Colonial Bank, established and agreed to the terms of a certain intercorporate tax allocation arrangement (the "Tax Sharing Agreement").

28.    Pursuant to the Tax Sharing Agreement, all federal income taxes were paid directly by BancGroup on behalf of the consolidated tax group, which includes Colonial Bank.

29.     Historically, in accordance with the Tax Sharing Agreement, each subsidiary of BancGroup that was a party to the Tax Sharing Agreement made federal-tax related payments to BancGroup in respect of the hypothetical, separate federal income tax liabilities of such member and its subsidiaries.

30.     Prior to the Receivership Date, and pursuant to the Tax Sharing Agreement, BancGroup in the ordinary course of business paid federal taxes owing by the consolidated tax group, including amounts owing by Colonial Bank and/or its subsidiaries.

31.     As of the Receivership Date, on information and belief, Colonial Bank and its subsidiaries have not paid BancGroup all federal-tax related amounts under and as required by the Tax Sharing Agreement.

32.     BancGroup asserts an unliquidated claim against Colonial Bank on account of (i) federal interest, penalties and taxes paid on behalf of Colonial Bank and/or its subsidiaries, (ii) benefits due to BancGroup for tax losses and credits generated by BancGroup and (iii) any and all unpaid interest, penalties and taxes attributable to Colonial Bank and its subsidiaries for which BancGroup is liable, including, without limitation, any interest, penalties and taxes with respect to the 2009 tax year.

33.     On information and belief, BancGroup also has claims against Colonial Bank and Colonial Bank's subsidiaries on account of state, local and foreign interest, penalties and taxes paid on behalf of Colonial Bank and its subsidiaries and/or advances by BancGroup to Colonial Bank or its subsidiaries in anticipation of tax refunds prior to receipt of such refunds.

34.     On account of the BancGroup's payment of federal, state and local taxes for the consolidated tax group, BancGroup is entitled to tax refunds in amounts to be determined after obtaining access and opportunity for review of records relating to BancGroup, Colonial Bank and its subsidiaries (the "Tax Refunds").

35.     All Tax Refunds are payable to BancGroup, regardless of whether such refunds are on account of taxes paid or losses incurred by Colonial Bank or its subsidiaries or any of BancGroup's other subsidiaries.

36. On information and belief, the FDIC-Receiver intends to assert a claim to some or all of the Tax Refunds directly or indirectly from federal, state and other taxing authorities. Such a claim is contrary to the rights of BancGroup under the Bankruptcy Code and the terms of the Tax Sharing Agreement. BancGroup therefore asserts a claim against the FDIC-Receiver and Colonial Bank (including its subsidiaries) on account of any such refunded amounts.

37. BancGroup also has claims against Colonial Bank and its subsidiaries in respect of all or a portion of any Tax Refunds received by Colonial Bank and its subsidiaries and asserts a claim against Colonial Bank and its subsidiaries for any and all such claims.

38. BancGroup is currently undergoing several federal, state and local tax audits, assessments, claims, and appeals thereof. To the extent any taxes, interest and/or penalties are determined to be owed the taxing authorities, BancGroup expressly reserves all rights to supplement and/or amend this Amended Complaint and the Proof of Claim to include any amounts attributable to Colonial Bank or its subsidiaries. To the extent that any taxing authority assesses additional taxes and/or interest and penalties against BancGroup, BancGroup expressly reserves all rights to supplement and/or amend this Amended Complaint and the Proof of Claim to include any amounts attributable to Colonial Bank or its subsidiaries.

**(Claims Arising Out of Capital Contributions and Certain Other Transfers)**

39. Some or all of the transfers by BancGroup of its property to Colonial Bank as described in the paragraphs that follow are voidable as preferences or fraudulent conveyances under Sections 544, 547 or 548 of the Bankruptcy Code because BancGroup was insolvent or without adequate capital (or unable to pay its debts in the ordinary course as they matured) at the time, or as a result, of each such transfer; Colonial Bank was insolvent at the time of its receipt of such transfer; and such transfer was made by BancGroup either in payment of an antecedent debt and outside of the ordinary course of business of both BancGroup and Colonial Bank or without BancGroup's having received reasonably equivalent value or fair consideration in exchange for such transfer.

40.     On information and belief, BancGroup historically made capital contributions and related transfers of property to Colonial Bank (the "Capital Contributions"), including, without limitation, Capital Contributions made between August 24, 2007, and August 24, 2009, in the amounts and on the dates specified in **Exhibit B**. Of that amount, at least $50,880,867 in cash Capital Contributions and $70,664,037 in transfers of loan receivables, were made in 2009 by BancGroup to Colonial Bank. Moreover, FDIC-Corporate, the Federal Reserve Bank of Atlanta or other governmental regulatory agencies may have pressured and induced BancGroup to make one or more of the Capital Contributions at a time when such agencies knew or should have known that appointment of the FDIC-Receiver was likely or imminent.

41.     On information and belief, in or around the month of June, 2009, the Debtor received a refund of federal taxes in the approximate amount of $166,000,000 and transferred that approximate amount to Colonial Bank in connection with the Debtor's receipt of such tax refund.

42.     On or about December 23, 2008, BancGroup made a loan, advance or capital contribution to CBG Real Estate, LLC ("CBG"), an Alabama limited liability company, the sole member of which is BancGroup, for the purpose of enabling CBG to acquire various loans from Colonial Bank having an approximate unpaid balance of $120,605,200 (the "Acquired Loans"). On or about March 31, 2009, CBG declared a dividend to BancGroup consisting of a 65% participation interest in some or all of the Acquired Loans pursuant to a Participation Certificate dated as of March 31, 2009, and, concurrently therewith, BancGroup contributed the participation interest to the capital of Colonial Bank. On information and belief, most, if not all, of the Acquired Loans were subprime and/or non-performing and have to date proven to be substantially uncollectible from the obligors thereof, absent foreclosure on any security for such Acquired Loans, and the value of such Acquired Loans is significantly less than the amount paid to Colonial Bank therefor by CBG with funds derived, on information and belief, from BancGroup.

43.     BancGroup asserts voidable transfer claims pursuant to Sections 544, 547 and 548 of the Bankruptcy Code in an amount not less than $899,867,786.00

**(CBG Florida REIT Exchange)**

44.     CBG Florida REIT Corp. ("Florida REIT"), a Florida corporation and an indirect subsidiary of BancGroup and BancGroup's principal subsidiary, Colonial Bank, is a qualified real estate investment trust under the Internal Revenue Code of 1986.

45.     At all times relevant hereto, Florida REIT's assets consisted primarily of participation interests in mortgage loans that were secured by commercial property in the State of Florida and that were originated by Colonial Bank.

46.     On or about May 15, 2007, Florida REIT issued its Fixed-to-Floating Rate Perpetual Non-Cumulative Preferred Stock, Class A, Series A (the "Florida REIT Preferred"), which were exchangeable upon an "Exchange Event" into Series A Preferred Stock of BancGroup.

47.     On or about August 10, 2009, Colonial Bank received notice from FDIC-Corporate directing that Florida REIT exchange all Florida REIT Preferred for an equal amount of Fixed-to-Floating Rate Perpetual Non-Cumulative Preferred Stock, Series A in BancGroup (the "BancGroup Preferred Stock") due to the occurrence of an "Exchange Event" under the Exchange Agreement, entered into as of May 21, 2007, among Florida REIT, Colonial Bank and BancGroup (the "Preferred Exchange").

48.     On information and belief, the Preferred Exchange occurred and was effective at 8:00 a.m. Eastern Standard Time on August 11, 2009.  As of August 11, 2009, there was $300,000,000 in liquidation amount of Florida REIT Preferred outstanding.

49.     On information and belief, BancGroup received (or was entitled to receive) a transfer of, or otherwise obtained (or was entitled to obtain) a legal and/or beneficial interest in or right to, the Florida REIT Preferred and asserts rights to and legal or beneficial interests in the Florida REIT Preferred.

50.     If, however, BancGroup thereafter transferred or was otherwise divested of its legal and/or beneficial interests in the Florida REIT Preferred in connection with the Preferred Exchange or otherwise, the net result of this Preferred Exchange was an increase in the obligations of BancGroup by the amount of $300,000,000, for the purpose and with the effect of benefiting Colonial Bank and/or its transferees,

successors or assigns without providing BancGroup any consideration or value and with a resulting loss or

forfeiture of BancGroup's interest in the Florida REIT Preferred.

51.     If legal and beneficial interests of BancGroup in the Florida REIT Preferred were transferred

by or otherwise divested from BancGroup in favor of Colonial Bank and/or its transferees, successors or

assigns, BancGroup, which would have been insolvent and undercapitalized at the time of such transfer,

asserts a claim pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code to avoid such transfer or

divestiture, and to recover the Florida REIT Preferred or the value thereof together with any damages

BancGroup may have suffered as a result of being deprived of the use of the property and proceeds thereof.

In addition, BancGroup reserves all other claims or causes of action, under any theory, with respect to the

Preferred Exchange.

### (Preference Claims)

52.     On or before the Receivership Date, on numerous occasions, BancGroup transferred property

to, or caused its property (or an interest in its property) to be transferred to, Colonial Bank or to certain third

parties for the benefit of Colonial Bank (collectively, the "Transfers") on account of antecedent obligations of

BancGroup to Colonial Bank.

53.     The approximate amount of the Transfers occurring during the one-year period before the

Petition Date has not yet been determined because of BancGroup's lack of access to the Books and Records.

54.     At the time of the Transfers, Colonial Bank was (i) an "insider" of BancGroup as that term is

defined in the Bankruptcy Code or under applicable non-bankruptcy law and (ii) a "creditor" of BancGroup,

as that term is defined in the Bankruptcy Code or under applicable non-bankruptcy law.

55.     Because BancGroup was insolvent and undercapitalized at the time some of the Transfers

were made to Colonial Bank (or after giving effect to such Transfers), the Transfers are voidable pursuant to,

among other applicable laws, (i) Sections 544 (applying applicable non-bankruptcy law) and 547 of the

Bankruptcy Code and (ii) applicable non-bankruptcy law.  Consequently, BancGroup is entitled to recover

from Colonial Bank the property or the value of the property transferred on account of such antecedent obligations.

56.     Specifically, BancGroup is entitled to avoid and recover each Transfer from Colonial Bank as a voidable preference or other avoidable transfer to the extent that such Transfer (i) was to or for the benefit of a creditor, (ii) was to or on account of an antecedent debt of BancGroup, (iii) was made while BancGroup was insolvent, (iv) was made within one year or less from the date that BancGroup's bankruptcy case was commenced, and (v) would permit Colonial Bank to receive more than it would receive in a case under Chapter 7 of the Bankruptcy Code if such Transfer had not been made.

### (<u>Vendor Contract Claims</u>)

57.     BancGroup is a party to numerous agreements with vendors (the "<u>Vendors</u>") who lease property, perform services, deliver goods, or license software.  Those agreements (the "<u>Vendor Contracts</u>") primarily benefitted the banking operations formerly conducted by Colonial Bank.

58.     Prior to the Receivership, Colonial Bank, as the primary beneficiary, typically paid Vendors for goods and services received pursuant to the Vendor Contracts.

59.     There continue to be unpaid obligations outstanding in connection with certain of the Vendor Contracts.  For all such outstanding obligations, BancGroup asserts claims against Colonial Bank (i) for goods or services provided to Colonial Bank pursuant to any Vendor Contracts to the extent that Colonial Bank has failed or refused to reimburse BancGroup for amounts paid by BancGroup pursuant to such Vendor Contracts and (ii) for any unpaid liabilities outstanding under such Vendor Contracts.

### (<u>Improper Asset Possession and Sales</u>)

60.     On the Receivership Date, the FDIC-Receiver took possession and control of the premises of Colonial Bank and, in connection therewith, took possession of or asserted dominion and control over certain property (including, but not limited to, furniture, fixtures, equipment, intellectual property, Books and Records, and other tangible and intangible assets) owned by BancGroup (the "<u>BancGroup Property</u>").

61.     To date, the FDIC-Receiver has neither accounted for nor compensated BancGroup for its possession, dominion and control of the BancGroup Property.

62.     On information and belief, the FDIC-Receiver converted certain items of BancGroup Property by purporting to transfer an ownership interest therein to BB&T.

63.     BancGroup thus asserts a claim against Colonial Bank for payment, in full, for such transferred property in an amount to be determined but equal to the fair market value of the transferred property.

### (Deposit Claims)

64.     As of the Receivership Date, BancGroup had cash deposits at Colonial Bank in the amount of $36,995,513.27, which were divided among six accounts (collectively, the "Deposit Accounts") in the approximate amounts stated on **Exhibit C**.

65.     On the Receivership Date, the FDIC-Receiver sold substantially all of the assets of Colonial Bank to BB&T pursuant to the P&A Agreement.

66.     The assets sold and transferred to BB&T included the Deposit Accounts.

67.     As of the date of the Proof of Claim continuing until the filing of this Amended Complaint, all of the Deposit Accounts remain with BB&T and, both prior to and after the Petition Date, the FDIC-Receiver has prevented BB&T from allowing BancGroup access to balances in the Deposit Accounts.

68.     After the Receivership Date but prior to the Petition Date, BancGroup received a wire transfer of $1,425,000 from SunTrust Bank in Atlanta, Georgia, which was deposited into a Deposit Account utilized by BancGroup as its operating account.  Additional debits and credits also occurred in the operating account during this period.  No activity occurred in the remainder of the Deposit Accounts between the Receivership Date and the Petition Date.

69.     As of the Petition Date and after the sale to BB&T, BancGroup had cash deposits at BB&T in the amount of $38,409,237.74, which were divided among the six Deposit Accounts in the approximate amounts stated on **Exhibit D**.

70.     In connection with the Receivership and the subsequent sale of substantially all of Colonial Bank's assets to BB&T, BancGroup was impermissibly denied access to and use of the Deposit Accounts by the FDIC-Receiver (other than the limited use granted under Bankruptcy Court Order), was unable to invest the funds in the Deposit Accounts, move the funds to another depository institution, transfer the funds to interest-bearing accounts or use the funds in the Deposit Accounts to pay lawful claims of BancGroup, all in violation of the automatic stay under Section 362 of the Bankruptcy Code.

71.     BancGroup asserts a claim for damages (including interest) for the lost use of the funds in the Deposit Accounts from August 14, 2009, until such time as BancGroup is able to transfer funds to interest bearing accounts at other institutions, and such other damages as are recoverable in connection with the violation of the automatic stay under Section 362 of the Bankruptcy Code, but excluding damages for any time periods during which BancGroup has agreed in a cash collateral consent order in BancGroup's bankruptcy case not to assert a stay violation against the FDIC-Receiver.

72.     In the Chapter 11 case of BancGroup, the FDIC-Receiver and BB&T apparently purport to reserve certain alleged (and disputed) rights with respect to the Deposit Accounts, including rights under the P&A Agreement.  To the extent that BancGroup's rights to the Deposit Accounts have been in any way compromised or modified, BancGroup asserts a claim for any lost value or other consequential damages.

73.     BancGroup asserts a protective claim for the outstanding balance in each of the Deposit Accounts in the event the FDIC-Receiver purports to exercise any rights it may assert under the P&A Agreement or otherwise with respect to the Deposit Accounts.

74.     BancGroup also asserts that the FDIC-Receiver does not have any right of setoff with respect to the Deposit Accounts on account of any alleged claims it may assert against BancGroup.  This claim of BancGroup is entitled to priority pursuant to 12 U.S.C. § 1821(d)(11)(a)(ii).

**(Administrative Claims)**

75.     On information and belief, in certain instances, BancGroup paid or became liable for certain costs and expenses that inured to the sole or primary benefit of Colonial Bank subsequent to the Receivership Date.

76.     These amounts include, without limitation, any liability incurred by BancGroup as a result of BB&T's decision to exclude certain contracts from the P&A Agreement and expenses incurred by BancGroup that may have benefitted Colonial Bank.  In addition, BancGroup has foregone return premiums on insurance policies that it agreed not to cancel at the request of the FDIC-Receiver, as the FDIC-Receiver believed that amounts payable under the policies in respect of which such return premiums would have been paid were property of the Receivership.  BancGroup agreed to defer cancellation of the policies and receipt of the return premium with full reservation of rights against the FDIC-Receiver.

**(Employee Related Costs)**

77.     Prior to the Receivership, BancGroup was the sponsor of certain employee benefit plans, including The Colonial BancGroup 401(k) Plan and The Colonial Retirement Plan (collectively, the "Benefit Plans").

78.     While these Benefit Plans covered all or substantially all of BancGroup's employees, the participants and beneficiaries of the Benefit Plans consisted overwhelmingly of former officers and employees of Colonial Bank.

79.     BancGroup asserts a claim against Colonial Bank for all costs and expenses incurred by BancGroup in administering the Benefit Plans during the pendency of BancGroup's bankruptcy case, including the unwinding/termination of those Benefit Plans, and for any claims asserted against BancGroup that otherwise arise out of or relate to either of the Benefit Plans, including any claim asserted by the Pension Benefit Guaranty Corporation (the "PBGC") for any underfunding of the Benefit Plans.  The PBGC has filed proofs of claim in the Chapter 11 case of BancGroup aggregating in excess of $30,000,000.

- 14 -

80.     Prior to the Receivership, BancGroup sponsored a deferred compensation plan, entitled The Colonial BancGroup, Inc. Non-Qualified Deferred Compensation Plan (the "Deferred Compensation Plan").

81.     To the extent that BancGroup is or becomes liable for amounts due under the Deferred Compensation Plan, but does not receive the funds held in the Deferred Compensation Plan (or in the trust established in connection therewith), BancGroup asserts a claim against Colonial Bank for amounts due on account of the claims of former Colonial Bank officers and employees under the Deferred Compensation Plan.

### (Insurance Claims)

82.     BancGroup has an ownership interest in a variety of insurance policies.

83.     Certain of BancGroup's insurance policies name BancGroup and its subsidiaries, including Colonial Bank and its subsidiaries, as insured persons.

84.      BancGroup asserts claims against Colonial Bank for Colonial Bank's fair share of premiums paid by BancGroup with respect to such insurance.

85.     BancGroup further asserts the right to recover any proceeds of the insurance policies received by Colonial Bank or the FDIC-Receiver, including, without limitation, the proceeds of any director and officer liability policies and any fidelity and crime policy.

### (Indemnification Claims)

86.     BancGroup's bylaws provide for the indemnification of all BancGroup directors and officers.

87.     Prior to the Petition Date, at least five employees of Colonial Bank served as officers of BancGroup.

88.     If and to the extent that such officers (or any directors, officers, or employees of Colonial Bank) assert indemnification or contribution claims against it, BancGroup asserts against Colonial Bank claims for reimbursement of and indemnity against all such claims.

**(Other Contingent, Unliquidated Claims)**

89.     BancGroup asserts claims against Colonial Bank for reimbursement, contribution, indemnity, exoneration and subrogation with respect to all claims at any time asserted against BancGroup as co-obligor with, pledgor for the benefit of or joint/and several obligor with Colonial Bank, including, but not limited to, (a) any claims asserted against BancGroup that arise out of or are related to the mortgage warehouse lending business of Colonial Bank or any of its affiliates; or (b) on account of any guaranty, security agreement, indemnity, payment enhancement or assurance or other agreement entered into by BancGroup for the benefit of Colonial Bank or as security or payment assurance for any obligation of Colonial Bank or any of its subsidiaries.

**(Fees and Expenses Incurred in Bankruptcy Case)**

90.     BancGroup has incurred, and continues to incur, substantial legal fees and other expenses as a result of the FDIC-Receiver's repeated and ongoing violations of the automatic stay under Section 362 of the Bankruptcy Code, including, the FDIC-Receiver's unauthorized actions in denying BancGroup access to the Deposit Accounts and the Books and Records.

91.     Excluding damages for any time periods during which BancGroup has agreed in a cash collateral consent order in BancGroup's bankruptcy case not to assert a stay violation against the FDIC-Receiver, BancGroup asserts a claim for recovery of damages available under Section 362 of the Bankruptcy Code all as to be determined by the Bankruptcy Court as a "core" claim in the Bankruptcy Case.  This claim is entitled to priority pursuant to 12 U.S.C. § 1821(d)(11)(a)(i).

**(Orlando Real Estate)**

92.     In its proof of claim in the Chapter 11 case of BancGroup, the FDIC-Receiver asserts that it has or may have an ownership interest in or other claim to property that is located at 715 North Garland Avenue, Orlando, Florida 38201 (the "Garland Road Property").  The basis for the FDIC-Receiver's assertion of an interest or a desire to conduct further investigation to ascertain whether or not an interest exists in the Garland Road Property is unclear.

- 16 -

93.     The Garland Road Property is titled in BancGroup according to the real estate records in Orange County, Florida.  BancGroup acquired ownership of the property as the result of a merger on or about September 18, 1998, of C&G Properties of Orlando, Inc., a Florida corporation, which at the time of the merger was the owner of the Garland Road Property.

94.     Colonial Bank held a mortgage with respect to the Garland Road Property to secure an indebtedness allegedly owed by BancGroup to Colonial Bank, which mortgage and the underlying indebtedness secured thereby were satisfied from the proceeds of a condemnation award in the amount of $2,592,900 pursuant to a Stipulated Order of Taking entered on or about October 16, 2007, by the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, in a condemnation proceeding instituted by the State of Florida Department of Transportation against BancGroup as owner of the subject property.

95.     By stipulation of the parties, the legal and beneficial ownership interests in the Garland Road Property and any rents, profits or proceeds thereof are to be adjudicated by the Bankruptcy Court.  To the extent that it is determined by the Bankruptcy Court that the Garland Road Property is an asset of the Receivership, amounts paid by BancGroup in satisfaction of Colonial Bank's mortgage, taxes paid by BancGroup in respect of the Garland Road Property and all other fees and expenses incurred by BancGroup in the Chapter 11 case in connection with its maintenance of the Garland Road Property or the condemnation proceedings now pending with respect to such property would be reimbursable to BancGroup by the FDIC-Receiver (if not otherwise reimbursed to BancGroup from the proceeds, rents or profits of such property) and would constitute a claim in the Receivership.

### (Interest)

96.     BancGroup asserts a claim against Colonial Bank for interest, at the highest rate of interest available under applicable law, on account of sums owed to BancGroup pursuant to its Liquidated Claim from the Receivership Date until receipt of payment and any and all contingent and/or unliquidated claims from the date that such claims cease to be contingent and are liquidated until receipt of payment.

**(Equity Interests)**

97.     BancGroup owns 100% of the outstanding stock of Colonial Bank.  Without waiving any other claim set forth herein, BancGroup makes a claim against Colonial Bank, pursuant to 12 U.S.C. § 1821(d)(11)(A), for the right to have distributed to it all funds or other property remaining (if any) after all depositors, creditors, other claimants and administrative expenses of the Receivership are paid, and the required accounting report has been filed.

**THE FDIC-RECEIVER'S DENIAL OF BANCGROUP'S PROOF OF CLAIM**

98.     As alleged more fully above, BancGroup timely filed the Proof of Claim with the FDIC-Receiver in the Receivership on or about November 19, 2009.

99.     In the Denial, the FDIC-Receiver provided BancGroup notice that BancGroup's Claims had been disallowed.

100.    The Denial stated:

> The claims of Colonial BancGroup, Inc. for $514,420.78 were submitted without sufficient supporting documentation and have not been proven to the satisfaction of the Receiver.

101.    The FDIC-Receiver's reference to lack of sufficient documentation ignores the fact that the FDIC-Receiver took possession and control of substantially all of the electronic and hard copy records of BancGroup as of the Receivership Date and has consistently denied BancGroup from even obtaining access to such records.

102.     The notice provides no additional detail or explanation regarding the FDIC-Receiver's decision.

103.    On information and belief, it is the FDIC-Receiver's practice to request additional information from claimants if the FDIC-Receiver requires further information to determine whether a claim and/or the amount of such claim is valid.  *See, e.g.*, ALLTEL Info. Servs., Inc. v. FDIC, 970 F. Supp 775, 776 (C.D. Cal. 1997) ("In response to a request by an FDIC claims representative, ALLTEL provided the FDIC a letter… which provided calculations in support of both Proofs of Claims.")

104.     The FDIC-Receiver did not request any further information from BancGroup or its counsel regarding the Proof of Claim.

105.     On information and belief, the FDIC-Receiver typically issues receivership certificates when it allows a claim, but has not yet determined the amount (if any) that the claimant will receive when the proceeds of the receivership estate are distributed.

106.     The FDIC-Receiver did not provide BancGroup with any receivership certificates, but rather disallowed the Claims outright.

107.     Section 1821(d)(2)(H) of the FDI Act states that the FDIC-Receiver "shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this chapter." 12 U.S.C. § 1821(d)(2)(H).

108.     The FDIC-Receiver's refusal to consider BancGroup's Claims and its cryptic disallowance of those Claims violated the FDIC-Receiver's statutory duty to pay all valid claims in accordance with the FDI Act.

109.     Section 11(d)(5)(B) of the FDI Act further obligates the FDIC-Receiver to "allow any claim received on or before the date specified in the notice published under paragraph (3)(B)(i) by the receiver from any claimant which is proved to the satisfaction of the receiver." 12 U.S.C. § 1821(d)(5)(B).

110.     The FDIC-Receiver provided no grounds regarding why BancGroup's Claims were not proven to its satisfaction. The FDIC-Receiver's failure to do so is a violation of its statutory duties. The Denial has placed BancGroup into a position of substantial uncertainty as to its rights.

111.     The FDI Act provides that, when the FDIC-Receiver has disallowed a claim, the claimant may "request administrative review of the claim" or "file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within with the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)." 12 U.S.C. § 1821(d)(6)(A).

112.     The FDI Act further provides that, "[i]f any claimant requests review under this subparagraph in lieu of filing or continuing any action under paragraph (6) and the Corporation agrees to such request, the Corporation shall consider the claim after opportunity for a hearing on the record."   12 U.S.C. § 1821(d)(7)(A).  "The Corporation shall also establish such alternative dispute resolution process as may be appropriate for the resolution of claims…"  12 U.S.C. § 1821(d)(7)(B)(i).

113.     Notwithstanding these statutory directives, the FDIC-Receiver's notice sets forth no administrative review process in which BancGroup could seek a hearing regarding its Claims.  Nor does it appear that the FDIC-Receiver has established any alternative dispute resolution mechanism to resolve proof of claim disputes.  Rather, the FDIC-Receiver's notice directs BancGroup to file a lawsuit if BancGroup disagrees with the disallowance of its Claims.  Accordingly, BancGroup filed this action.

## CLAIMS FOR RELIEF

### Count I

### (Determination of BancGroup's Proof of Claim)

114.     BancGroup incorporates the allegations and averments contained in paragraphs1 through 113 as if set forth fully herein.

115.     Under 12 U.S.C. § 1821(d)(6)(A), the Court has *de novo* jurisdiction to consider the Claims set forth in the Proof of Claim.  *See*, *e.g.*, Freeman v. FDIC, 56 F.3d 1394, 1400 (D.C. Cir. 1995) ("[U]nder section 1821(d)(6) [claimant] had recourse to de novo judicial review of the FDIC's denial of [their] claim."); Benjamin Franklin Shareholders Litig. Fund v. FDIC, 501 F. Supp. 2d 103, 106 (D.D.C. 2007) ("[T]his Court reviews de novo claims filed with, and processed by the FDIC under its administrative claims process.") (*citing* Freeman v. FDIC, 56 F.3d 1394, 1400 (D.C. Cir. 1995)).

116.     Each Claim is a valid and proven claim against the Receivership and the FDIC-Receiver is obligated to pay such Claims (subject to, and accordance with, 12 U.S.C. § 1821(d)(11)).

- 20 -

## Count II

### (Conversion of BancGroup's Property)

117.    BancGroup incorporates the allegations and averments contained in paragraphs 1 through 116 as if set forth fully herein.

118.    The FDIC-Receiver's refusal to compensate BancGroup for property taken into the Receivership that (a) belonged to BancGroup rather than Colonial Bank, (b) was improperly transferred to Colonial Bank and/or (c) is property that otherwise should be returned to BancGroup under applicable law, constitutes conversion of BancGroup's property.


## PRAYER FOR RELIEF

WHEREFORE, BancGroup respectfully requests the Court to grant the following relief:

1.    Enter an order declaring BancGroup's Claims to be valid and proven against the Receivership;

2.    Enter an order directing the FDIC-Receiver to pay the Claims from the assets of the Receivership in accordance with 12 U.S.C. § 1821(d)(11);

3.    Enter an order directing the FDIC-Receiver to provide BancGroup with an accounting of the disposition of the assets of the Receivership if any Claim is not satisfied in full;

4.    Enter an order directing the FDIC-Receiver to provide BancGroup with an accounting of all property transferred from BancGroup in connection with the Receivership;

5.    Enter a judgment against the FDIC-Receiver for damages, in an amount to be determined, equal to the value of BancGroup's property converted by the FDIC;

6.    Award BancGroup costs and attorneys fees as may be permitted by law; and

7.    Award BancGroup such other relief as may be just.

## **DEMAND FOR JURY TRIAL**

BancGroup, by and through its attorneys, hereby demands a trial by jury on all claims asserted in the

Amended Complaint that are triable by a jury.


Dated:  May 28, 2010                           */s/ Rufus T. Dorsey, IV*
                                              One of the Attorneys for Plaintiff,
                                              The Colonial BancGroup, Inc.

                                              Dorman Walker, Esq.
                                              W. Clark Watson, Esq.
                                              BALCH & BINGHAM LLP
                                              Post Office Box 78
                                              Montgomery, Alabama 36101
                                              (334) 834-6500
                                              (334) 269-3115
                                              dwalker@balch.com
                                              cwatson@balch.com

                                              C. Edward Dobbs, Esq.
                                              Rufus T. Dorsey, IV, Esq.
                                              PARKER, HUDSON, RAINER & DOBBS LLP
                                              1500 Marquis Two Tower
                                              285 Peachtree Center Avenue NE
                                              Atlanta, Georgia 30303
                                              (404) 523-5300
                                              (404) 522-8409
                                              edobbs@phrd.com
                                              rdorsey@phrd.com

**<u>EXHIBIT INDEX</u>**

Exhibit A:     Denial Letter

Exhibit B:     Claims Arising Out of Capital Contributions and Certain Other Transfers

Exhibit C:     Deposit Accounts as of August 14, 2009

Exhibit D:     Deposit Accounts as of August 25, 2009

**Exhibit A**

**Denial Letter**

**FDIC**

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

**CERTIFIED MAIL 7009 2820 0003 7873 2657**
**RETURN RECEIPT REQUESTED**

January 6, 2010

The Colonial BancGroup, Inc
100 Colonial Bank Boulevard
Montgomery, AL 36117

SUBJECT:    10103–COLONIAL BANK
            MONTGOMERY, AL – In Receivership
            **NOTICE OF DISALLOWANCE OF CLAIM**

Dear Claimant:

The Receiver of  COLONIAL BANK has reviewed your claim against the receivership.  After a thorough review of your filed claim along with your supporting documentation, the Receiver has determined to disallow your claim for the following reason(s) :

> The claims of Colonial BancGroup, Inc. for $514,420.78 were submitted without sufficient supporting documentation and have not been proven to the satisfaction of the Receiver.

Pursuant to 12 U.S.C. Section 1821 (d) (6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver), in the United States District (or Territorial) Court for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice.

**IF YOU DO NOT FILE A LAWSUIT** (or continue any lawsuit commenced before the appointment of the Receiver) **BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM.  12 U.S.C. Section 1821(d)(6)(B).**

However, if a portion of your claim is for an insured deposit, your claim is not against the Receiver but rather is against the FDIC in its "corporate" capacity as deposit insurer.  An insured depositor's rights are prescribed in 12 U.S.C. Section 1821(f) and differ from the rights described in the preceding paragraphs.

If you have any questions about this letter, please contact the undersigned at (972) 761-8671.

Sincerely,

Creditor Claims Agent
Claims Department

RLS7218

**Exhibit B**

**Claims Arising Out of Capital Contributions and Certain Other Transfers**

| | 8/24/2007 - 12/31/2007 | 1/1/2008 - 12/31/2008 | 1/1/2009 - 8/24/2009 |
|---|---|---|---|
| **Colonial Bank:** | | | |
| Cash | - | $375,000,000.00 | $50,880,867.00 |
| Citrus & Chemical Acquisition | $216,281,627.40 | - | - |
| Loans | - | - | 70,664,037.05 |
| Securities | - | - | 21,041,254.55 |
| Tax Refunds | - | - | 166,000,000 |
| | $216,281,627.40 | $375,000,000.00 | $308,586,158.60 |

Total:   $899,867,786.00

**Exhibit C**

**Deposit Accounts as of August 14, 2009**

| DDA Account # | Balance |
|---|---|
| xxxxxx1127 | $12,968,213.77 |
| xxxxxx5437 | 4,000,000.00 |
| xxxxxx5460 | 5,091,170.82 |
| xxxxxx5452 | 5,045,815.06 |
| xxxxxx5445 | 2,282,904.24 |
| xxxxxx3218 | 7,607,409.38 |
| Balance | $36,995,513.27 |

**Exhibit D**

**Deposit Accounts as of August 25, 2009**

| **DDA Account #** | **Balance** |
|---|---|
| xxxxxx1127 | $14,381,938.24 |
| xxxxxx5437 | 4,000,000.00 |
| xxxxxx5460 | 5,091,170.82 |
| xxxxxx5452 | 5,045,815.06 |
| xxxxxx5445 | 2,282,904.24 |
| xxxxxx3218 | 7,607,409.38 |
| Balance | $38,409,237.74 |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on May 28, 2010, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing.

*/s/ Rufus T. Dorsey, IV*
One of the Attorneys for Plaintiff,
The Colonial BancGroup, Inc.