UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

THE COLONIAL BANCGROUP, INC.,

Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver
for Colonial Bank,

Defendant.

Case No. 2:10-cv-0198 (MHT)

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT
FDIC-RECEIVER FOR PARTIAL JUDGMENT ON THE PLEADINGS

Michael A. Fritz, Sr.
michael@fritzandhughes.com
Fritz Hughes & Hill LLC
7020 Fain Park Drive Suite 1
Montgomery, AL 36117
(334) 215-4422

John J. Clarke, Jr.
Thomas R. Califano
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500
(212) 335-4501

Attorneys for the
  Federal Deposit Insurance Corporation,
  as Receiver for Colonial Bank

Dated:  February 24, 2011

**Table of Contents**

Page

Table of Authorities .............................................................................................. ii

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ....................................................................................................3

      A.     Nature of the Action...............................................................................3

      B.     The Challenged Downstream Transfers..................................................4

      C.     The Written Directions to Increase Capital ............................................6

      D.     Procedural Background............................................................................7

APPLICABLE LEGAL STANDARD ....................................................................7

ARGUMENT -- ALL OF PLAINTIFF'S FRAUDULENT TRANSFER AND
      PREFERENCE CLAIMS SHOULD BE DISMISSED .......................................9

I.     Section 1828(u) Prohibits All Claims That Seek Avoidance or Recovery for
      Transfers Made to Colonial Bank on or After December 15, 2008....................9

II.    BancGroup's Claim for Avoidance of Its Transfer of REIT Preferred Securities Is
      Not Legally Actionable for Additional Reasons................................................12

III.   The Complaint Fails to Plead Any Other Actionable Claim of
      Fraudulent Transfer or Preference ...................................................................17

      A.     Plaintiff Has Not Alleged an Actionable Fraudulent Transfer .............17

      B.     Plaintiff's Preference Claims Are Equally Inactionable.......................21

CONCLUSION.....................................................................................................24

Statutory Addendum .............................................................................................I

## <u>Table of Authorities</u>

<u>Page</u>

<u>Cases</u>

*3V Capital Master Fund Ltd. v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.),* No. 10-60017-CIV-ASG, slip op. (S.D. Fla. Feb. 11, 2011) .................. *passim*

*Adams v. Anderson (In re Superior Stamp & Coin Co., Inc.),*
223 F.3d 1004 (9th Cir. 2000) ......................................................................13

*Angell v. Ber Care, Inc.,(In re Caremerica, Inc.),*
409 B.R. 737 (Bankr. E.D.N.C. 2009) ........................................................ 22-23

*Ashcroft v. Iqbal,*
__ U.S. __, 129 S.Ct. 1937 (2009).............................................................. *passim*

*Banker Ins. Co. v. Fla. Res. Prop. & Cas. Joint Underwriting Ass'n,*
137 F.3d 1293 (11th Cir. 1998) .................................................................... 8-9

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................... *passim*

*Bonded Fin. Servs. v. European Am. Bank,*
838 F.2d 890 (7th Cir. 1988) ................................................................13, 14, 16

*Branch v. F.D.I.C.,*
825 F. Supp. 384 (D. Mass. 1993) ..............................................................18, 20

*Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.),*
6 F.3d 1119 (5th Cir. 1993) ............................................................................19

*Capital Bancshares, Inc. v. F.D.I.C.,*
957 F.2d 203 (5th Cir. 1992) ...........................................................................5

*CareerCom Corp. v. United States Dep't of Educ. (In re CareerCom Corp.),*
215 B.R. 674 (Bankr. M.D. Pa. 1997) ..............................................................18

*Carmichael v. Kellogg, Brown & Root Servs., Inc.,*
572 F.3d 1271 (11th Cir. 2009) ........................................................................3

*Cash Inn of Dade, Inc. v. Metropolitan Dade County,*
938 F.2d 1239 (11th Cir. 1991) ........................................................................9

*Cooper v. Ashley Comms., Inc. (In re Morris Comms. NC, Inc.),*
914 F.2d 458 (4th Cir. 1990) ..........................................................................19

Page

*Cooper v. Centar Investments (Asia) Ltd. (In re Trigem Am. Corp.),*
    431 B.R. 855 (Bankr. C.D. Cal. 2010).......................................................................14

*Garrett v. Falkner (In re Royal Crown Bottlers of North Alabama, Inc.),*
    23 B.R. 28 (Bankr. N.D. Ala. 1982) ........................................................................18

*Gen. Elec. Cap. Corp. v. Murphy (In re Duque Rodriguez),*
    895 F.2d 725 (11th Cir. 1990) ................................................................................18

*Glenn Constr. Co., LLC v. Bell Aerospace Svc., Inc.,*
    No. 1:09-CV-250 (MEF), 2009 WL 5174209 (M.D. Ala. Dec. 21, 2009)..............................9

*Howdeshell of Ft. Myers v. Dunham-Bush, Inc. (In re Howdeshell of Ft. Myers),*
    55 B.R. 470 (Bankr. M.D. Fla. 1995) ......................................................................13

*IBT Int'l Inc. v. Northern (In re Int'l Admin. Servs.,, Inc.,*
    408 F.3d 689 (11th Cir. 2005) ................................................................................12

*In re Augie/Restivo Baking Co.,*
    87 B.R. 242 (Bankr. E.D.N.Y. 1988)...................................................................18, 18

*Jacobs v. Tempur Pedic Int'l, Inc.,*
    626 F.3d 1327 (11th Cir. 2010) ..............................................................................20

*Lawrence Paperboard Corp. v. Arlington Tr. Co. (In re Lawrence Paperboard Corp),*
    76 B.R. 866 (Bankr. D. Mass. 1987) ......................................................................18

*McPhillips v. Blue Cross Blue Shield of Alabama,*
    Civ. A. No. 2:10-cv-0615, 2010 WL 3833950 (M.D. Ala. Sept. 23, 2010) .........................3, 7

*Mellon Bank, N.A. v. Metro Comms, Inc.,*
    945 F.2d 635 (3d Cir. 1991)...................................................................................19

*Nordberg v. Sanchez (In re Chase & Sanborn Corp.),*
    813 F.2d 1177 (11th Cir. 1987) ........................................................................... 13-14

*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.),*
    848 F.2d 1196 (11th Cir. 1988) .........................................................................1, 13, 14

*Official Committee of Unsecured Creditors v. Blomen (In re Hydrogen L.L.C.),*
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) ....................................................................21

*OHC Liquidating Tr. v. Credit Suisse First Boston (In re Oakwood Homes Corp.),*
    340 B.R. 510 (Bankr. D. Del. 2006) .......................................................................22

Page

*Pennington v. Bigham,*
  512 So. 2d 1344 (Ala. 1987) ...................................................................................19

*Robert v. Abbett,*
  No. 3:08-cv-0329 (WKW), 2009 WL 902488 (M.D. Ala. Mar. 31, 2009) ..............................8

*Rubin v. Mfrs. Hanover Tr. Co.,*
  661 F.2d 979 (2nd Cir. 1981)...................................................................................18

*SFM Holdings, Ltd. v. Banc of America Secs., LLC*
  600 F.3d 1334, 1337 (11th Cir. 2010),
  *rehearing denied,* ___ F.3d ___ (11th Cir. June 3, 2010)...................................................8, 14

*Stanton v. Larsh,*
  239 F.2d 104 (5th Cir. 1956) ...................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007)...............................................................................................8, 14

*Tolz v. Barnett Bank of S. Fla. (In re Safe-T-Brake of S. Fla., Inc.,*
  162 B.R. 359 (Bankr. S.D. Fla. 1993) .......................................................................13

*United States v. Alabama Dep't of Mental Health,*
  No. 2:08-cv-1025 (MEF), 2010 WL 447399 (M.D. Ala. Feb. 9, 2010) ...................................7

*Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.),*
  288 B.R. 189 (Bankr. D. Del. 2003) .........................................................................22

*Village of Oakwood v. State Bank & Tr. Co.,*
  539 F.3d 373 (6th Cir. 2008) ...................................................................................12

*Wolkowitz v. F.D.I.C. (In re Imperial Credit Indus., Inc.),*
  527 F.3d 959 (9th Cir. 2008) ...................................................................................11

*Yelverton v. Homes at Potomac Greens Assocs. L.P. (In re Yelverton),*
  Adv. Proc. No. 10-10001, 2010 WL 1688403 (Bankr. D.D.C. Apr. 22, 2010)........................21


Statutes, Rules and Regulations

11 U.S.C. § 101(31) ...................................................................................................23

11 U.S.C. § 544................................................................................................. *passim*

11 U.S.C. § 547................................................................................................. *passim*

Page

11 U.S.C. § 548 ............................................................................................ *passim*

11 U.S.C. § 550 ................................................................................................ 11-12

12 U.S.C. § 1821(d)(2)(A) ......................................................................................3

12 U.S.C. § 1821(d)(5)(D)(i) ..................................................................................4

12 U.S.C. § 1821(d)(6)(A) ......................................................................................4

12 U.S.C. § 1821(d)(13)(D) ..................................................................................12

12 U.S.C. § 1828(u) ...................................................................................... *passim*

Ala. Code § 8-9A.4(c) ...........................................................................................17

Ala. Code § 8-9A.5(a) ...........................................................................................17

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 7-8

Fed. R. Civ. P. 12(c) ..................................................................................... *passim*

## Other Regulations

Board of Governors of the Federal Reserve System, Final Rule, "Risk-Based Capital
    Standards: Trust Preferred Securities and the Definition of Capital," 70 Fed. Reg.
    11827 (Mar. 10, 2005) ................................................................................ 15-16

H.R. Conf. Rep. 106-434 (1999), *reprinted in* 1999 U.S.C.C.A.N. 245 .....................................12

Defendant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver") respectfully submits this memorandum of law in support of its motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## PRELIMINARY STATEMENT

Plaintiff in this action, the chapter 11 debtor The Colonial BancGroup, Inc. ("BancGroup"), is the former holding company and sole stockholder of Colonial Bank, a failed bank for which the FDIC-Receiver was appointed receiver.  It seeks a judicial determination of a variety of claims that it asserted against the Colonial Bank receivership.  This motion to dismiss concerns one subset of plaintiff's claims for avoidance and recovery as preferences or fraudulent transfers of capital contributions and other transfers made to Colonial Bank in the two years before BancGroup's bankruptcy.  Those claims fail to state a claim as a matter of law for several reasons.

1.     The claims are barred by 12 U.S.C. § 1828(u) to the extent they concern transfers made to Colonial Bank on or after December 15, 2008, when the Bank first became subject to a written direction to increase its capital.  At least $308 million of the downstream transfers challenged by BancGroup in its "voidable transfer claims" are subject to this statutory bar, Compl., ¶¶ 40-43 & Exh. B, as are BancGroup's claims for recovery of $300 million in REIT preferred securities that it contributed to Colonial Bank in August 2009, *see* Compl., ¶¶ 44-51.

2.     The claims for avoidance or recovery with respect to the August 2009 contribution of REIT preferred securities to Colonial Bank also must be dismissed because the transfer did not involve any interest in property of the debtor.  *See Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199 (11th Cir. 1988).  The REIT preferred securities were Tier 1 capital of Colonial Bank that never were controlled by BancGroup.

BancGroup had agreed when the securities were issued that if regulators ever directed the conversion of the securities because of Colonial Bank's financial hardship, BancGroup would contribute them to the Bank immediately after it received them from investors.  When a conversion event occurred in August 2009, BancGroup merely performed its contractual duty to contribute the securities to its bank subsidiary and never obtained a property interest in them that would provide a basis for an avoidance claim.

3.      The complaint also fails to plead any actionable claim for recovery as to any transfers made to Colonial Bank before December 15, 2008.  BancGroup has failed to allege facts to support its conclusory allegations that either BancGroup or its subsidiary Colonial Bank was insolvent at the time of any alleged transfer during this period – more than one year before Colonial Bank failed – and BancGroup cannot deny that it received corresponding increases in its equity investment in Colonial Bank for each of the challenged transfers, which is presumptively considered "reasonably equivalent value" for purposes of a constructive fraudulent transfer claim.  As for alleged preferences, the amended complaint fails to allege any specific facts relating to any transfer before December 15, 2008.

Therefore, in order to eliminate the burden and expense of litigation with respect to claims that are not actionable, the FDIC-Receiver respectfully moves to dismiss all of these claims as a matter of law under Federal Rule 12(c).

## BACKGROUND

**A.   Nature of the Action**[1]

Plaintiff is a Delaware corporation that had its headquarters in Montgomery, Alabama.  It was the parent corporation of Colonial Bank and certain non-bank subsidiaries.  Compl., ¶¶ 1, 2.  By order of the Alabama State Banking Department (the "ASBD") dated August 14, 2009, Colonial Bank was closed and the FDIC-Receiver was appointed its receiver.  Compl., ¶ 8.

By operation of law, upon its appointment the FDIC-Receiver succeeded to the rights, titles, powers and privileges of Colonial Bank.  12 U.S.C. § 1821(d)(2)(A).  The FDIC-Receiver entered into a purchase and assumption agreement dated as of August 14, 2009 with Branch Banking & Trust Co. ("BB&T") under which BB&T purchased certain assets and assumed certain liabilities of Colonial Bank, including deposit liabilities.  Compl., ¶ 10.

On August 25, 2009, BancGroup filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Alabama.  Compl., ¶ 12.  It alleges that it continues "to manage its business affairs as debtor in possession," *id.*, but BancGroup is not now engaged in any active business and intends to liquidate whatever assets remain in its bankruptcy estate.

In accordance with the Federal Deposit Insurance Act, the FDIC-Receiver set November 19, 2009 as the last day to file claims in the receivership for purposes of the exclusive receivership claims process set forth in that statute.  Compl., ¶ 13.  BancGroup filed a claim with the FDIC-Receiver.  Compl., ¶ 14.  In a letter dated January 6, 2010, the FDIC-Receiver disallowed BancGroup's claim because it had not been proven to the satisfaction of the receiver.

---

[1] The well-pleaded allegations of the complaint are assumed to be true solely for purposes of this motion. Fed. R. Civ. P. 12(c); *McPhillips v. Blue Cross Blue Shield of Alabama*, Civ. A. No. 2:10-cv-0615, 2010 WL 3833950, at*1 (M.D. Ala. Sept. 23, 2010); *see Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

Compl., ¶ 19 & Exh. A; *see* 12 U.S.C. § 1821(d)(5)(D)(i) (FDIC as receiver "may disallow any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver").

BancGroup thereafter filed this action seeking a *de novo* judicial determination of its disallowed receivership claim.   Compl., ¶¶ 114-16;  *see*  12  U.S.C.  § 1821(d)(6)(A).   The amended complaint asserts a variety of claims against the Colonial Bank receivership, including claims seeking avoidance or recovery for various alleged capital contributions, preferences and other transfers from BancGroup to Colonial Bank as constructive fraudulent transfers or preferences under sections 544, 547, 548 and 550 of the Bankruptcy Code.[2]

## B.   The Challenged Downstream Transfers

There is no allegation in the complaint that any of the challenged downstream transfers was made with "actual fraud."  Instead, BancGroup's avoidance claims are predicated entirely on theories of "constructive" fraudulent transfer or preference. *See* Compl., ¶¶ 39, 51, 52.

First, BancGroup seeks avoidance and recovery with respect to "capital contributions and certain other transfers" to Colonial Bank in an aggregate amount of $899,867,786.00 that allegedly were made during the two year period before BancGroup filed its bankruptcy petition.

---

[2]  The amended complaint asserts claims for:  (i) intercompany receivables in the alleged amount of $514,420.78, Compl., ¶¶ 24-26; (ii) tax refunds and other tax related payments, Compl., ¶¶ 27-38; (iii) capital contributions and "certain other transfers," Compl., ¶¶ 39-43; (iv) avoidance or recovery with respect to REIT preferred securities issued by a subsidiary of Colonial Bank, CBG Florida REIT Corp., Compl., ¶¶ 44-51; (v) recovery of unspecified "preferences," Compl., ¶¶ 52-56; (vi) unspecified vendor contracts, Compl., ¶¶ 57-59; (vii) allegedly "improper asset possession and sales," Compl., ¶¶ 60-63; (viii) deposit claims, Compl., ¶¶ 64-74; (ix) alleged "administrative claims" incurred by BancGroup during its bankruptcy case, Compl., ¶¶ 75-76; (x) "employee related costs," Compl., ¶¶ 77-81; (xi) insurance, Compl., ¶¶ 82-85; (xii) indemnification, Compl., ¶¶ 86-88; (xiii) other contingent, unliquidated claims, Compl., ¶ 89; (xiv) fees and expenses incurred in BancGroup's bankruptcy case, Compl., ¶¶ 90-91; (xv) certain Orlando real estate, Compl., ¶¶ 92-95; (xvi) interest, Compl., ¶ 96; and (xvii) BancGroup's stock in Colonial Bank, Compl., ¶ 97.

*See* Compl., ¶¶ 39-43.  According to Exhibit B to the amended complaint, $308,586,158.60 of these challenged transfers were made during 2009.[3]

Second, BancGroup seeks to avoid its August 2009 contribution to Colonial Bank of REIT preferred securities having an aggregate liquidation preference of $300 million.  According to the complaint, on or about August 10, 2009, Colonial Bank was notified by the FDIC of "the occurrence of an 'Exchange Event' with respect to the securities."  *See* Compl., ¶ 47.  As a result, the REIT preferred securities in the hands of public investors were deemed to be converted into shares of preferred stock issued by BancGroup, *see id.*, and the REIT preferred securities passed through BancGroup and were immediately contributed to Colonial Bank, *see* Compl., ¶¶ 50, 51.  BancGroup alleges that the "net result" of this transaction was to increase its obligations by $300,000,000 for the benefit of Colonial Bank "without providing BancGroup any consideration or value . . ."  Compl., ¶ 50.

Finally, BancGroup alleges without any specificity that "on numerous occasions" BancGroup transferred property to, or caused its property to be transferred to, Colonial Bank or to third parties for the benefit of Colonial Bank on account of antecedent obligations.  Compl., ¶ 52.

---

[3] Among these transfers was the alleged transfer to Colonial Bank in June 2009 of a $166 million federal tax refund.  Compl., ¶ 41.  That refund was the property of Colonial Bank, not of BancGroup, *see Capital Bancshares, Inc. v. F.D.I.C.*, 957 F.2d 203, 210 (5th Cir. 1992), and BancGroup therefore cannot avoid its transfer as either a preference or a fraudulent transfer.  *See* 11 U.S.C. § 544(a) (granting avoidance power for "any transfer of property *of the debtor*") (emphasis added); 11 U.S.C. § 547(b) (trustee "may avoid any transfer of an interest *of the debtor* in property") (emphasis added); 11 U.S.C. § 548(a)(1) (trustee may avoid "any transfer . . . of an interest *of the debtor* in property") (emphasis added).  The ownership issue need not be reached to grant this motion, however, because 12 U.S.C. § 1828(u) prohibits avoidance of this transfer in any event.

### C.     <u>The Written Directions to Increase Capital</u>

On December 15, 2008, Colonial Bank (through its board of directors) entered into a memorandum of understanding (the "Bank MOU") with the FDIC and the ASBD.  Under the heading "CAPITAL," the Bank MOU included the following provision:

> 14.     By <u>February 28, 2009</u>, the Bank shall have a Tier 1 Leverage Capital Ratio of not less than 8 percent and a Total Risk-Based Capital Ratio of not less than 12 percent.  The Tier 1 Leverage and Total Risk-Based Capital ratios shall be calculated utilizing the definitions contained in Section 325.2 of the FDIC Rules and Regulations.  Thereafter, in the event that the Tier 1 Leverage Capital ratio falls below 8 percent or the Total Risk Based Capital ratio falls below 12 percent, the Supervisory Authorities should be notified and capital shall be increased in an amount sufficient to meet the ratios required by this provision within 30 days.

*See* Declaration of John J. Clarke, Jr. dated February 24, 2011, Exhibit A ("Clarke Decl.") (emphasis in original), filed in support of the accompanying motion to take judicial notice.

In June 2009, after Colonial Bank had failed to comply with the capital and other requirements of the Bank MOU, it was replaced with a consent cease and desist order issued by the FDIC and the ASBD (the "Bank C&D").  The Bank C&D order included the following, essentially identical capital requirements:

### 3.     <u>CAPITAL</u>

> (a)     By September 30, 2009, the Bank shall have a Tier 1 Leverage Capital Ratio of not less than 8 percent and a Total Risk Based Capital Ratio of not less than 12 percent.  The Tier 1 Leverage and Total Risk Based Capital ratios shall be calculated using the definitions contained in Section 325.2 of the FDIC's Rules and Regulations, 12 C.F.R. § 325.2.  Thereafter, in the event the Tier 1 Leverage Capital Ratio falls below 8 percent or the Total Risk-Based Capital Ratio falls below 12 percent, the Supervisory Authorities should be notified in writing and capital shall be increased in an amount sufficient to meet the ratios required by this provision within 30 days.

Clarke Decl., Exh. B.

Both the Bank MOU and the Bank C&D were described by BancGroup in contemporaneous filings with the Securities and Exchange Commission.[4]

**D.**   **Procedural Background**

BancGroup filed its original complaint in this action on March 5, 2010 and an amended complaint on May 28, 2010.  [Doc. Nos. 1,  20].  The FDIC-Receiver filed its answer on June 25, 2010 [Doc. No. 22], and its first amended answer on October 26, 2010 [Doc. No. 37].

## APPLICABLE LEGAL STANDARD

"Rule 12(c) of the Federal Rules of Civil Procedure provides that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.  The same standard applicable to Rule 12(b)(6) motions to dismiss applies to Rule 12(c) motions for judgment on the pleadings. . . .  The court accepts the plaintiff's allegations as true . . . and construes the complaint in plaintiff's favor." *McPhillips v. Blue Cross Blue Shield of Alabama*, No. 2:10-cv-0615 (WHA), 2010 WL 3833950, at *1 (M.D. Ala. Sept. 23, 2010) (citations omitted); *see* Fed. R. Civ. P. 12(c).  The court also takes the allegations in an answer to be true "'to the extent that they have not been denied or do not conflict with those of the complaint.'" *United States v. Alabama Dep't of Mental Health*, No. 2:08-cv-1025 (MEF), 2010 WL 447399, at *2 (M.D. Ala. Feb. 9, 2010) (quoting *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956)).

---

[4] In its Form 10-K for the year ended December 31, 2008, BancGroup informed investors that "Colonial Bank entered into an informal Memorandum of Understanding (the Bank MOU) with the FDIC and the Alabama State Banking Department on December 15, 2008," and that "[k]ey elements of the Bank MOU include: *improvement of regulatory capital ratios* to an 8% Tier I leverage ratio and a 12% total risk-based capital ratio by March 31, 2009 . . ."  Colonial BancGroup, Inc. Form 10-K dated March 2, 2009, at 3 (emphasis added).  BancGroup similarly described the existence and terms of the Bank C&D in its public filings with the SEC.  *See* Colonial BancGroup, Inc. Form 8-K dated June 9, 2009.

As with a motion to dismiss under Federal Rule 12(b)(6), the first step in testing the sufficiency of a complaint on a motion under Rule 12(c) is to identify any conclusory allegations. *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Although a court must accept well-pleaded factual allegations of a complaint, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

After eliminating from consideration any conclusory allegations, the court must then determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. That requirement is met "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (emphasis added).

A court considering a motion under Rule 12(c) also may consider "documents incorporated by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *SFM Holdings, Ltd. v. Banc of America Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.") (citations omitted), *rehearing denied*, ___ F.3d ___ (11th Cir. June 3, 2010); *see also Robert v. Abbett*, No. 3:08-cv-0329 (WKW), 2009 WL 902488, at *3 (M.D. Ala. Mar. 31, 2009) (quoting *Bankers Ins. Co. v. Fla. Res. Prop. & Cas. Joint*

*Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998)).  Judicial notice is appropriate where, as here, "documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Glenn Constr. Co., LLC v. Bell Aerospace Svc., Inc.*, No. 1:09-CV-250 (MEF), 2009 WL 5174209, at *1 (M.D. Ala. Dec. 21, 2009) (internal quotation omitted).  "A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases."  *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991).

## ARGUMENT

### ALL OF PLAINTIFF'S FRAUDULENT TRANSFER AND PREFERENCE CLAIMS SHOULD BE DISMISSED

**I.      Section 1828(u) Prohibits All Claims That Seek Avoidance or Recovery for Transfers Made to Colonial Bank on or After December 15, 2008**

Section 1828(u) of title 12 expressly prohibits the preference and fraudulent transfer claims that BancGroup attempts to assert against the FDIC-Receiver for transfers made on or after December 15, 2008, when Colonial Bank first became subject to a written direction to increase its capital from the FDIC.  All of BancGroup's challenges to capital contributions and other downstream transfers occurring in 2009 are subject to this statutory prohibition, *see* Compl., ¶¶ 39-43 & Exh. B, including its claims for recovery with respect to REIT preferred securities that BancGroup contributed to Colonial Bank on August 11, 2009, *see* Compl., ¶¶ 44-51.

Under section 1828(u), "[n]o person may bring a claim against any Federal banking agency (including in its capacity as conservator or receiver)" for the return of assets of a "controlling shareholder" of an insured bank that were transferred to that bank by the controlling shareholder, or a claim "for monetary damages or other" relief based on such a transfer, if at the time of the transfer the bank was "subject to any direction issued in writing by a Federal banking

agency to increase its capital . . . ."[5]   The "claims" that are subject to this prohibition include claims "for the avoidance of preferential or fraudulent transfers or conveyances."   12 U.S.C. § 1828(u)(2)(A).

There is no dispute that Colonial Bank was an "insured depository institution" within the meaning of section 1828(u), nor is there any question that BancGroup was its "controlling shareholder."  *See* Compl., ¶ 97 ("BancGroup owns 100% of the outstanding stock of Colonial Bank").  Indeed, BancGroup is precisely the type of claimant that Congress had in mind when it added section 1828(u) to federal law as a prohibition against such claims.  *See* H.R. Conf. Rep. 106-434, at 160 (1999), *reprinted in* 1999 U.S.C.C.A.N. 245, 276 (section 1828(u) was added to "protect[] the Federal banking agencies and deposit insurance funds from claims by the bankruptcy trustee of a depository institution holding company or other person for the return of capital infusions") (emphasis added).

From December 15, 2008 forward, Colonial Bank was subject to a "direction issued in writing by a Federal banking agency to increase its capital," as the statute requires.  On that date, Colonial Bank entered into the Bank MOU with the FDIC and its state regulator, the ASBD, which included the following express requirement for the Bank to increase its capital:

> 14.   By <u>February 28, 2009</u>, the Bank shall have a Tier 1 Leverage Capital Ratio of not less than 8 percent and a Total Risk-Based Capital Ratio of not less than 12 percent.  The Tier 1 Leverage and Total Risk-Based Capital ratios shall be calculated utilizing the definitions contained in Section 325.2 of the FDIC Rules and Regulations.   Thereafter, in the event that the Tier 1 Leverage Capital ratio falls below 8 percent or the Total Risk Based Capital ratio falls below 12 percent, the Supervisory Authorities should be notified and capital shall be increased in an amount sufficient to meet the ratios required by this provision within 30 days.

---

[5] The complete text of 12 U.S.C. § 1828(u) is set forth in the Statutory Addendum.

Clarke Decl., Exh. A.[6]   Then, in June 2009, this direction was replaced by a substantially identical provision in the Bank C&D, in which the FDIC and the ASBD required:

### 3.   CAPITAL

(a)   By September 30, 2009, the Bank shall have a Tier 1 Leverage Capital Ratio of not less than 8 percent and a Total Risk Based Capital Ratio of not less than 12 percent. The Tier 1 Leverage and Total Risk Based Capital ratios shall be calculated using the definitions contained in Section 325.2 of the FDIC's Rules and Regulations, 12 C.F.R. § 325.2. Thereafter, in the event the Tier 1 Leverage Capital Ratio falls below 8 percent or the Total Risk-Based Capital Ratio falls below 12 percent, the Supervisory Authorities should be notified in writing and capital shall be increased in an amount sufficient to meet the ratios required by this provision within 30 days.

Clarke Decl., Exh. B. These provisions constitute "directions" to Colonial Bank that were "issued in writing by a Federal banking agency to increase its capital," within the meaning of section 1828(u).

All of the requirements for the application of section 1828(u) have been satisfied, requiring dismissal of *all* of BancGroup's claims for avoidance or recovery with respect to the challenged downstream transfers made on any date on or after December 15, 2008.[7]   *See Wolkowitz v. F.D.I.C. (In re Imperial Credit Indus., Inc.),* 527 F.3d 959, 972 n.14 (9th Cir. 2008) ("any payments under the guaranty would clearly constitute a 'transfer of assets' and therefore § 1828(u) would bar the Trustee from arguing that they were fraudulent conveyances").[8]

---

[6] For the reasons set forth in the accompanying request, this Court may take judicial notice of the Bank MOU and the Bank C&D. Further, consideration of those materials is permissible in deciding a motion to dismiss under Federal Rule 12(c). *See supra* at 8-9 (collecting cases).

[7] Section 1828(u)(1)(B), addressing inter-regulator issues when capital infusions are to come from insurance companies and broker-dealers, does not apply in this case.

[8] Section 1828(u) would also preclude the assertion of claims for recovery against any subsequent transferee, including BB&T, because no action to avoid the transfers can be maintained against the FDIC-Receiver and avoidance of the transfers is a pre-condition to any

## II.     BancGroup's Claim for Avoidance of Its Transfer of REIT Preferred Securities Is Not Legally Actionable for Additional Reasons

Even if 12 U.S.C. § 1828(u) did not expressly bar BancGroup's avoidance claims with respect to its August 2009 contribution of REIT preferred securities to Colonial Bank (which it unquestionably does), those claims still would be subject to dismissal as a matter of law because BancGroup agreed years in advance that it would be a mere conduit for such a transfer.  Under controlling law, the alleged transfer therefore did not involve any "interest in property" of BancGroup.

A fundamental requirement for any claim seeking to avoid a transfer as a preference or a fraudulent transfer under the Bankruptcy Code is that the challenged transfer involve an interest in property of the debtor.  *See* 11 U.S.C. § 544(b)(1) (state law fraudulent transfer claims) (trustee may avoid "any transfer of an interest of the debtor in property . . ." that meets the sttautory criteria); 11 U.S.C. § 547(b) (preferences) (setting forth requirements for avoidance as a preference of "any transfer of an interest of the debtor in property"); 11 U.S.C. § 548(a) (fraudulent transfers) ("trustee may avoid any transfer . . . of an interest of the debtor in property . . .").

---

recovery from a subsequent transferee under the Bankruptcy Code.  *See* 11 U.S.C. § 550(a); *3V Capital Master Fund Ltd. v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.)*, ___ B.R. ___, 2011 WL 522008 at *29 (M.D. Fla. Feb. 11, 2011) (language of section 550(a) "means that if a transfer is *not* avoided, the trustee may not recover under Section 550") (emphasis in original) (citing *IBT Int'l Inc. v. Northern (In re Int'l Admin. Servs.,, Inc.)*, 408 F.3d 689, 703 (11th Cir. 2005).  Other defenses also would bar such claims against BB&T.  *See, e.g., Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 387 (6th Cir. 2008) (jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) prohibited suit against assuming bank where allowing claim to proceed would circumvent FDIC's statutory claims process); 11 U.S.C. § 550(b) (barring recovery from subsequent transferee that takes for value in good faith and without knowledge of the voidability of the transfer).  BB&T is not a defendant, however, and these issues are not presented here.

The Eleventh Circuit has "adopted the control test to determine whether a debtor had possession of property allegedly recoverable under section 548" of the Bankruptcy Code. *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199 (11th Cir. 1988) (citing *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177 (11th Cir. 1987). Under that test, courts "must 'look beyond the particular transfers in question to the entire circumstance of the transactions'" to determine whether a debtor controlled transferred property that is subsequently sought by a bankruptcy trustee. *Id.* (quoting *Chase & Sanborn*, 813 at 1181-82); *see generally Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 893-94 (7th Cir. 1988) (Easterbrook, J.).

The "control" test considers "(1) the power to designate which party will receive the funds, and (2) the power to actually disburse the funds at issue to that party." *3V Capital Master Fund Ltd. v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.)*, __ B.R.__, 2011 WL 522008 at *24 (S.D. Fla. Feb. 11, 2011) (citing *Tolz v. Barnett Bank of S. Fla. (In re Safe-T-Brake of S. Fla., Inc.*, 162 B.R. 359, 365 (Bankr. S.D. Fla. 1993)). "[C]ontrol does not exist where [a] loan from [a] third party [is] conditioned on payment to a particular creditor," since in those circumstances neither of the elements of the control test can be satisfied. *TOUSA*, 2011 WL 522008 at *24 (citing *Howdeshell of Ft. Myers v. Dunham-Bush, Inc. (In re Howdeshell of Ft. Myers)*, 55 B.R. 470, 474-75 (Bankr. M.D. Fla. 1995).

If a debtor did not "control" the property at issue then the transfer at issue is not subject to avoidance.[9] The rationale for excluding property that the debtor does not control is that

_____

[9] Physical possession of the property is irrelevant, as is any possibility that a debtor might choose to breach its agreement to direct payment to an identified creditor and use the property at issue for another purpose. *See Adams v. Anderson (In re Superior Stamp & Coin Co., Inc.)*, 223 F.3d 1004, 1009 (9th Cir. 2000). "Where a transfer is made pursuant to an antecedent agreement between the new lender and the debtor that the new funds will be used only to pay a specified

"without the requisite control, the subject property could not have been used to pay another creditor, and the transfer [of that property] thus did not decrease the value of the debtor's estate." *TOUSA*, 2011 WL 522008, at *24 (discussing *Chase & Sanborn Corp.*, 813 F.2d at 1181-82).

The recent appellate decision in *TOUSA* reiterates that in evaluating the "totality of the circumstances" involving a challenged transfer, a court must consider "the actual documents governing the transactions" to determine a debtor's "control." *TOUSA*, 2011 WL 522008 at *24; *see also Cooper v. Centar Investments (Asia) Ltd. (In re Trigem Am. Corp.)*, 431 B.R. 855, 862 (Bankr. C.D. Cal. 2010) (oral agreement to downstream funds to corporate subsidiary for the purpose of paying parent bondholders was sufficient to establish that funds were not property of the debtor subsidiary).

In this case, the Exchange Agreement dated as of May 21, 2007, which is expressly referred to (and therefore incorporated by reference into) the amended complaint, *see* Compl., ¶ 47, includes a promise by BancGroup to contribute the REIT preferred securities to Colonial Bank immediately if BancGroup ever received those securities after regulators determined that an "Exchange Event" had occurred. BancGroup's promise excludes the securities from property of its estate for purposes of the avoidance provisions of the Bankruptcy Code.[10]

"REIT preferred securities generally are issued by [special purpose entity] subsidiaries of a bank that qualify as REITs for tax purposes. In most cases, the REIT issues noncumulative perpetual preferred securities to the market and uses the proceeds to buy mortgage-related assets

---

creditor . . . the lender rather then the debtor 'controls' the funds." *Id.*; *see, e.g., Chase & Sanborn*, 813 F.2d at 1181-82. As Judge Easterbrook observed in another case, an entity does not have "dominion over the money" unless it is, in essence, "free to invest the whole [amount] in lottery tickets or uranium stocks." *Bonded Fin. Servs.*, 838 F.2d at 894.

[10] *See Tellabs*, 551 U.S. at 322 (on motion to dismiss, court may consider documents incorporated by reference into the complaint); *SFM Holdings, Ltd.*, 600 F.3d at 1337. A copy of the Exchange Agreement is attached as Exhibit C to the accompanying Clarke Declaration.

from its sole common shareholder, the parent bank."  Board of Governors of the Federal Reserve System, Final Rule, "Risk-Based Capital Standards:  Trust Preferred Securities and the Definition of Capital," 70 Fed. Reg. 11827, 11828 (Mar. 10, 2005).  The REIT preferred securities in this case were issued to investors by CBG Florida REIT Corp., a wholly owned subsidiary of Colonial Bank, were entitled to a stream of dividends from a pool of mortgage loans held by CBG Florida REIT, and have an aggregate liquidation preference of $300 million. *See* Compl., ¶¶ 44-45, 48.

As a condition to granting Tier 1 capital treatment to REIT preferred securities, federal regulators required those securities to be automatically convertible into shares of holding company preferred stock if the bank fell into financial hardship.  *See* 70 Fed. Reg. 11828.  In the CBG Florida REIT transaction, the triggering conditions were called an "Exchange Event" and the actions that would follow an Exchange Event were set forth in the Exchange Agreement.  If an Exchange Event occurred, Colonial Bank would get the benefit of the dividends and liquidation preference associated with the securities and investors would instead hold shares of BancGroup preferred stock.  *See* Exchange Agreement, at 2.  Such a conversion feature was required by regulators because, without one, "the REIT preferred securities would provide little support to a deteriorating or failing parent bank or to the FDIC, despite possibly comprising a substantial amount of the parent bank's tier 1 capital . . . ."  70 Fed. Reg. at 11828.

Accordingly, the Exchange Agreement provided that if an Exchange Event occurred, (1) investors' interests in the REIT preferred securities would be deemed shares of BancGroup preferred stock instead, (2) BancGroup would receive the REIT preferred securities and immediately would "contribute all of the [REIT preferred securities] to the Bank as a capital

contribution," and (3) Colonial Bank would be the owner of the securities. *See* Exchange Agreement, §§ 2(d), (e).

The amended complaint itself alleges that this is exactly what happened. On August 10, 2009, the FDIC notified Colonial Bank that an Exchange Event had occurred with respect to the REIT preferred securities and "directed that Florida REIT exchange all Florida REIT Preferred for an equal amount of Fixed-to-Floating Rate Perpetual Non-Cumulative Preferred Stock, Series A, in BancGroup . . ."[11] Compl., ¶ 47. The exchange happened the next morning, Compl., ¶ 48, and BancGroup "thereafter transferred" the REIT preferred securities to Colonial Bank. Compl., ¶ 50.

Under governing Eleventh Circuit authority, the REIT preferred securities never became the property of BancGroup during the short time it may have had possession of them. *See supra* at 13-14. Instead, as required by the Exchange Agreement, BancGroup immediately conveyed the REIT preferred securities to its bank subsidiary, Colonial Bank, where it always understood the securities would be sent if an Exchange Event occurred. Because BancGroup had no "control" over the securities during that time, no property interest existed that can be the basis for an avoidance claim, and BancGroup's claims for avoidance or recovery with respect to the transfer therefore fail as a matter of law. *See Bonded Fin. Servs.*, 838 F.2d at 893-94.

---

[11] At the time that the REIT preferred securities were issued, Colonial Bank was a national bank that was overseen by the Office of the Comptroller of the Currency. At the time of the Exchange Event, however, the FDIC was the primary Federal bank regulator for Colonial Bank because by then the Bank had converted from a national bank to a state-chartered bank. *See* Exchange Agreement, at 2 (defining "OCC" to include not only the Office of the Comptroller of the Currency but also "any successor United States Federal bank regulatory authority agency that is the primary supervisory agency for the Bank.").

### III.   The Complaint Fails to Plead Any Other Actionable Claim of Fraudulent Transfer or Preference

BancGroup's avoidance and recovery claims for transfers that pre-dated the December 15, 2008 written direction for Colonial Bank to increase capital also should be dismissed for failure to state a claim under *Iqbal* and *Twombly*.[12]

### A.   Plaintiff Has Not Alleged an Actionable Fraudulent Transfer

BancGroup purports to assert avoidance claims for "constructive fraudulent transfer" under sections 544(b) or 548(a)(1)(B) of the Bankruptcy Code with respect to the pre-2009 transfers.  Under section 548(a)(1), plaintiff bears the burden to show:  (1) that BancGroup "received less than a reasonably equivalent value in exchange for such transfer," and (2) that it "was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer" (or, as the result of such transfer, was left with "unreasonably small capital").  11 U.S.C. § 548(a)(1)(B); *see TOUSA*, 2011 WL 522008 at *26.[13]  Section 544(b) incorporates similar standards for constructive fraudulent transfer to the extent such a cause of action is available under state law.  11 U.S.C. § 544(b); *see* Ala. Code §§ 8-9A.4(c), 8-9A.5(a).[14]  With respect to its fraudulent transfer claims for transfers pre-dating December 15, 2008, BancGroup has not met its pleading burden for a number of reasons.

---

[12] Because of the application of section 1828(u), it is not necessary to determine whether BancGroup has pleaded the elements of an avoidance claim as to any transfer after December 15, 2008.

[13] The text of section 548(a)(1) is set forth in the Statutory Addendum.

[14] Section 544(b) provides in pertinent part that "[t]he trustee may avoid any transfer of . . . property . . . that is voidable under applicable law . . ." 11 U.S.C. § 544(b)(2011).  Under the Alabama Fraudulent Transfer Act, claims for constructive fraudulent transfer have substantially similar elements to those set forth in section 548(a)(1) of the Bankruptcy Code.  *See* Ala. Code §§ 8-9A.4(c), 8-9A.5(a) (reproduced in the Statutory Addendum).

*First*, neither the Bankruptcy Code nor state law permits a claim for constructive fraudulent transfer where the debtor receives a corresponding benefit from the transaction, whether directly or indirectly. *Gen. Elec. Cap. Corp. v. Murphy (In re Duque Rodriguez)*, 895 F.2d 725, 727 (11th Cir. 1990); *TOUSA*, 2011 WL 522008 at *33; *CareerCom Corp. v. United States Dep't of Educ. (In re CareerCom Corp.)*, 215 B.R. 674, 677 (Bankr. M.D. Pa. 1997); *In re Augie/Restivo Baking Co.*, 87 B.R. 242, 247 (Bankr. E.D.N.Y. 1988); *see also Pennington v. Bigham*, 512 So. 2d 1344, 1346 (Ala. 1987) (elements of constructive fraud under Alabama law include that grantor "conveys property without receiving valuable consideration"). In such a situation, "the debtor's net worth has been preserved and the interests of its creditors have not been injured by the transfer." *Duque Rodriguez*, 895 F.2d at 726 (quoting *Rubin v. Mfrs. Hanover Tr. Co.*, 661 F.2d 979, 991 (2nd Cir. 1981)).

For the same reason, "transfers to a solvent subsidiary are considered to be for reasonably equivalent value because, since the parent is the sole stockholder of the subsidiary corporation, any benefit received by the subsidiary is also a benefit to the parent." *Branch v. F.D.I.C.*, 825 F. Supp. 384, 399-400 (D. Mass. 1993); *see Lawrence Paperboard Corp. v. Arlington Tr. Co. (In re Lawrence Paperboard Corp)*, 76 B.R. 866, 872 (Bankr. D. Mass. 1987); *Garrett v. Falkner (In re Royal Crown Bottlers of North Alabama, Inc.)*, 23 B.R. 28, 30 (Bankr. N.D. Ala. 1982) ("the passing to a subsidiary of the consideration for a transfer by a debtor-parent may be presumed to be substantial"). The district court in *Branch* observed that it was "aware of no case in which transfers to a solvent subsidiary have been determined to be for less than equivalent value," and the *Branch* court therefore found such transfers to be subject to a rebuttable presumption that reasonably equivalent value was received. *Branch*, 825 F. Supp. at 400.

The presumption is even stronger here because BancGroup acknowledges that the challenged transfers were capital contributions to its wholly-owned subsidiary Colonial Bank. *See* Compl., ¶ 40 & Exh. B (detailing various alleged "capital contributions and related transfers of property" before December 15, 2008).  In return for those capital contributions, BancGroup received a dollar-for-dollar increase in the value of its equity investment in Colonial Bank. Plaintiff does not allege to the contrary.  As a result, there was *no change* in BancGroup's net worth as a result of the investments, and there can be no claim for constructive fraudulent transfer.  *See Augie/Restivo*, 87 B.R. at 247.  As the Third Circuit has observed:

> when the debtor is a going concern and its realizable going concern value
> after the transaction is equal to or exceeds its going concern value before
> the transaction, reasonably equivalent value has been received.

*Mellon Bank, N.A. v. Metro Comms, Inc.*, 945 F.2d 635, 647 (3d Cir. 1991).[15]

*Second*, it is entirely irrelevant whether BancGroup's equity interest has any remaining value today after the regulatory closure of Colonial Bank.  "The critical time is when the transfer is 'made.'  Neither subsequent depreciation in nor appreciation in value of the consideration affects the [ ] question whether reasonable equivalent value was given."  *Cooper v. Ashley Comms., Inc. (In re Morris Comms. NC, Inc.)*, 914 F.2d 458, 466 (4th Cir. 1990); *see also Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1126 (5th Cir. 1993) (reasonably equivalent value provided by decision to make fuel purchases for struggling airline when "evaluated as of the time it was made and during the time it was implemented").

---

[15] BancGroup received other indirect benefits from the capital contributions as well, further establishing its receipt of reasonably equivalent value.  Among other things, carefully scrutinized financial measures such as Colonial Bank's Tier 1 capital ratio improved as a result of the capital contributions.  Under the "identity of interests" rule, when a debtor and a third party are so related or situated that they share an identity of interests, "then 'what benefits one will, in such case, benefit the other to some degree.'"  *TOUSA*, 2011 WL 522008 at *30 n.43 (quoting *Royal Crown Bottlers*, 23 B.R. at 30).

*Third*, while the *Branch* court recognized that the presumption of "reasonably equivalent value" could be rebutted if the subsidiary to which a transfer was made was insolvent at the time, *see Branch*, 825 F. Supp. at 400, in this case BancGroup has failed to plead that Colonial Bank was insolvent at the time of any of the downstream transfers at issue, all of which allegedly occurred more than one year before the Bank's failure.   The amended complaint offers no substantive allegation in this regard but instead merely recites the elements of a claim for a preference or constructive fraudulent transfer:

> Some or all of the transfers by BancGroup to Colonial Bank as described in the paragraphs that follow are voidable as preferences or fraudulent conveyances under Sections 544, 547 or 548 of the Bankruptcy Code because BancGroup was insolvent or without adequate capital (or unable to pay its debts in the ordinary course as they matured) at the time, or as a result, of each such transfer; Colonial Bank was insolvent at the time of its receipt of such transfer; and such transfer was made by BancGroup either in payment of an antecedent debt and outside the ordinary course of business of both BancGroup and Colonial Bank or without BancGroup's having received reasonably equivalent value or fair consideration in exchange for such transfer.

Compl., ¶ 39.

This conclusory allegation is insufficient to establish either the insolvency of Colonial Bank or the insolvency of BancGroup at the time of any of the challenged transfers, both of which are necessary elements for BancGroup's claims.   The Supreme Court has instructed that, in evaluating a complaint for purposes of a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).   To the contrary, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*."   *Twombly*, 550 U.S. at 555 (citations omitted) (emphasis added); *see Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010).

BancGroup's wholly conclusory allegations are entitled to no weight on this motion. *See, e.g., Yelverton v. Homes at Potomac Greens Assocs. L.P. (In re Yelverton)*, Adv. Proc. No. 10-10001, 2010 WL 1688403, at *3 (Bankr. D.D.C. Apr. 22, 2010) (conclusory recitation of avoidance test of section 548(a) was insufficient to avoid dismissal of fraudulent transfer claim); *Official Committee of Unsecured Creditors v. Blomen (In re Hydrogen L.L.C.)*, 431 B.R. 337, 353 (Bankr. S.D.N.Y. 2010) (dismissing fraudulent transfer claim where "there is a complete absence of facts supporting the allegation that the Debtor received less than reasonably equivalent value in exchange for the payments made").

*Iqbal* and *Twombly* instruct that conclusory allegations such as BancGroup's here must be eliminated from consideration before the court determines whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949; *see Twombly*, 550 U.S. at 561 ("Factual allegations must be enough to raise a right to relief *above the speculative level* . . . on the assumption that all the allegations in the complaint are true") (emphasis added). A plaintiff hoping to stave off dismissal must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 128 S.Ct. at 1949. BancGroup has not met this standard, requiring dismissal of its fraudulent transfer claims with respect to any alleged transfer to Colonial Bank before December 15, 2008.

### B.   Plaintiff's Preference Claims Are Equally Inactionable

A claim for recovery of a preference under section 547(b) of the Bankruptcy Code requires the claimant to establish a "transfer of an interest of the debtor in property" that was: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before the transfer was made; (3) while the debtor was insolvent; (4) made on or within 90 days before the debtor's petition date (or one year before the petition date if the transferee

was an "insider"); and (5) that enables the transferee to recover more than it would receive on its antecedent debt in a chapter 7 liquidation.  *See* 11 U.S.C. § 547(b).

Courts considering motions to dismiss a preference claim have required the complaint to set forth "an identification of the nature and amount of each antecedent debt" and "an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer."  *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003); *see also OHC Liquidating Tr. v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 521-22 (Bankr. D. Del. 2006).  While other courts have applied more lenient pleading standards, *see generally Angell v. Ber Care, Inc. (In re Caremerica, Inc*.), 409 B.R. 737, 748-50 (Bankr. E.D.N.C. 2009) (discussing pre-*Twombly* case law), after *Iqbal* and *Twombly* it is clear that a preference plaintiff must at least identify the specific transfers by date and amount, the nature of each alleged antecedent debt and facts supporting the plaintiff's assertion that the debtor was insolvent at the time of the alleged transfer.  *See Caremerica*, 409 B.R. at 750-54.

In the amended complaint here, BancGroup does not satisfy *any* of these basic requirements.  No date is provided as to any alleged preference payment before December 15, 2008, no amount is provided for any such alleged transfer, no antecedent debt is identified with even the most rudimentary specificity, and no facts are alleged to support BancGroup's conclusory allegations of its insolvency.[16]  To the contrary, the amended complaint only alleges, in wholly conclusory fashion, that:

---

[16] Nor has BancGroup alleged that Colonial Bank was an "insider" of BancGroup, which would require the illogical conclusion that BancGroup's wholly owned subsidiary was a "person in control of the debtor."  *See* 11 U.S.C. § 101(31) (definition of "insider").  Merely asserting that Colonial Bank was an "insider," as BancGroup has done, *see* Compl., ¶ 54, does not satisfy

> On or before the Receivership Date, on numerous occasions, BancGroup transferred property to, or caused its property (or an interest in its property) to be transferred to, Colonial Bank or to certain third parties for the benefit of Colonial Bank (collectively, the "<u>Transfers</u>") on account of antecedent obligations of BancGroup to Colonial Bank.

Compl., ¶ 52.   Such insubstantial allegations fall far short of stating a claim under any conceivable standard, requiring dismissal of BancGroup's preference claims.

---

*Iqbal* and *Twombly*.  As a result, the 90-day preference period (and not the one year look-back period) should apply.  *See* 11 U.S.C. § 547(b)(4).

## <u>CONCLUSION</u>

For all of the foregoing reasons, the FDIC-Receiver respectfully requests that all of the

claims relating to allegedly avoidable transfers asserted in the amended complaint be dismissed

and that the Court grant the FDIC-Receiver such other and further relief as it may deem just and

proper.

Dated:  Montgomery, Alabama               Respectfully submitted,
           February 24, 2011


                                           /s/ Michael A. Fritz, Sr.
                                           Michael A. Fritz, Sr.
                                           Fritz, Hughes & Hill LLC
                                           7020 Fain Park Drive Suite 1
                                           Montgomery, AL 36117
                                           (334) 215-4422

                                               - and -

                                           John J. Clarke, Jr.
                                           Thomas R. Califano
                                           Michael D. Hynes
                                           Spencer Stiefel
                                           DLA Piper LLP (US)
                                           1251 Avenue of the Americas
                                           New York, New York  10020-1104
                                           (212) 335-4500

                                           Attorneys for the
                                             Federal Deposit Insurance Corporation
                                             as Receiver for Colonial Bank

## STATUTORY ADDENDUM

## 12 U.S.C. § 1828(u)

(u)   **Limitation on claims**

   (1)   **In general**

   No person may bring a claim against any Federal banking agency (including in its capacity as conservator or receiver) for the return of assets of an affiliate or controlling shareholder of the insured depository institution transferred to, or for the benefit of, an insured depository institution by such affiliate or controlling shareholder of the insured depository institution, or a claim against such Federal banking agency for monetary damages or other legal or equitable relief in connection with such transfer, if at the time of the transfer —

   (A)   the insured depository institution is subject to any direction issued in writing by a Federal banking agency to increase its capital; and

   (B)   for that portion of the transfer that is made by an entity covered by section 1844(g) of this title or section 1831v of this title, the Federal banking agency has followed the procedure set forth in such section.

   (2)   **Definition of claim**

   For purposes of paragraph (1), the term "claim"—

   (A)   means a cause of action based on Federal or State law that —

   (i)   provides for the avoidance of preferential or fraudulent transfers or conveyances; or

   (ii)   provides similar remedies for preferential or fraudulent transfers or conveyances; and

   (B)   does not include any claim based on actual intent to hinder, delay, or defraud pursuant to such a fraudulent transfer or conveyance law.

I

## **11 U.S.C. § 548(a)(1)**

(a)(1)   The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(A)   made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)   (i)   received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)   (I)   was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)   was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III)   intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV)   made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

II

<u>**Alabama Code § 8-9A.4**</u>

**Transfers fraudulent as to present and future creditors.**

(a)     A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

(b)     In determining actual intent under subsection (a), consideration may be given, among other factors, to whether:

    (1)     The transfer was to an insider;

    (2)     The debtor retained possession or control of the property transferred after the transfer;

    (3)     The transfer was disclosed or concealed;

    (4)     Before the transfer was made the debtor had been sued or threatened with suit;

    (5)     The transfer was of substantially all the debtor's assets;

    (6)     The debtor absconded;

    (7)     The debtor removed or concealed assets;

    (8)     The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

    (9)     The debtor was insolvent or became insolvent shortly after the transfer was made;

    (10)     The transfer occurred shortly before or shortly after a substantial debt was incurred; and

    (11)     The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

(c)     A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor:

(1)     Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2)     Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

## Alabama Code § 8-9A.5

**Transfers fraudulent as to present creditors.**

(a)     A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.

(b)     A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt and the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of February 2011, the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  The following counsel will be served electronically:

**C. Edward Dobbs**
**Rufus T. Dorsey IV**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303

**Jordan Dorman Walker , Jr.**
Balch & Bingham LLP
P O Box 78
Montgomery, AL 36101

**William Clark Watson**
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203

/s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.

I