UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

**THE COLONIAL BANCGROUP, INC.,**

**Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver
for Colonial Bank,**

**Defendant.**

**Case No. 2:10-cv-0198 (MHT)**

**REPLY MEMORANDUM IN FURTHER SUPPORT OF FDIC-RECEIVER'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Michael A. Fritz, Sr.
michael@fritzandhughes.com
Fritz, Hughes & Hill LLC
1784 Taliaferro Trail, Suite A
Montgomery, Alabama  36117
(334) 215-4422

John J. Clarke, Jr.
Thomas R. Califano
Michael D. Hynes
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500
(212) 335-4501

Attorneys for the
  Federal Deposit Insurance Corporation,
  as Receiver for Colonial Bank

Dated:  April 18, 2011

## Table of Contents

Page

PRELIMINARY STATEMENT ..................................................................... 1

ARGUMENT --

THE AVOIDANCE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ...................... 4

I.  Section 1828(u) Bars All Preference and Fraudulent Transfer Claims Challenging
    Transfers Made to Colonial Bank on or After December 15, 2008................................. 4

    A.  Section 1828(u) Requires a "Direction in Writing" to
        Increase Capital.  It Does Not Require a Capital "Directive."............................ 4

    B.  Section 502(d) of the Bankruptcy Code Is Not Excluded
        from the Reach of 12 U.S.C. § 1828(u) ................................................ 6

II. The REIT Preferred Securities Were Never Property of the Estate
    and Are Not Subject to Any Type of Avoidance Claim .................................. 9

III. BancGroup's Other Avoidance Claims Must Be Dismissed
    for Failure to  State a Claim.......................................................... 13

IV. Dismissal Should Be With Prejudice ............................................. 16

CONCLUSION.......................................................................... 18

## Table of Authorities

Page

### Cases

*3V Capital Master Fund Ltd. v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.)*, __ B.R.__, 2011 WL 522008 (S.D. Fla. Feb. 11, 2011) ...............................10

*Adams v. Anderson (In re Superior Stamp & Coin Co., Inc.)*,
223 F.3d 1004 (9th Cir. 2000) ......................................................................11, 12

*Ali v. Federal Bureau of Prisons*,
552 U.S. 214 (2008).............................................................................................6

*Angell v. Burrell (In re Caremerica, Inc.)*,
409 B.R. 759 (Bankr. E.D.N.C. 2009) ................................................................14

*Ashcroft v. Iqbal*,
__ U.S. __, 129 S.Ct. 1937 (2009).................................................................13, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................13

*Cadle Co. v. Mangan (In re Flanagan)*,
503 F.3d 171 (2d Cir. 2007).............................................................................11

*Holloway v. Internal Rev. Svc. (In re Odom Antennas, Inc.)*,
340 F.3d 705 (8th Cir. 2003) ..........................................................................6, 7

*In re Lids Corp.*,
260 B.R. 680 (Bankr. D. Del. 2001) ....................................................................7

*In re Marketing Assocs. of Amer., Inc.*,
122 B.R. 367 (Bankr. E.D. Mo. 1991)..................................................................8

*Kuhn v. Thompson*,
304 F. Supp. 2d 1313 (M.D. Ala. 2004) ............................................................17

*Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Group, Inc.)*,
331 B.R. 580 (Bankr. D. Del. 2005), *reconsid. denied*,
335 B.R. 77 (Bankr. D. Del. 2005) ...................................................................6, 7

*Marwill v. Oncale (In re Life Fund 5.1 LLC)*,
No. 09 B 32672, 2010 WL 2650024 (Bankr. N.D. Ill. June 30, 2010)...................14

Page

*Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*,
    813 F.2d 1177 (11th Cir. 1987) ................................................................................10, 11, 13

*Sosa v. Airprint Sys., Inc.*,
    133 F.3d 1417 (11th Cir. 1998) ................................................................................17

*Springel v. Prosser (In re Prosser)*,
    Adv. Proc. No. 08-03002, 2009 WL 3270765 (Bankr. D.V.I. Oct. 9, 2009)............................7

*Springfield Assocs., L.L.C. v. Enron Corp. (In re Enron Corp.)*,
    379 B.R. 425 (S.D.N.Y. 2007)................................................................................7

*Target Brands, Inc. v. Russell Petroleum Corp.*,
    No. 2:07-cv-1113-MEF, 2008 WL 4701316 (M.D. Ala. Oct. 23, 2008)................................17

*Thomas v. Ala. State Dep't of Mental Health & Mental Retardation*,
    No. 2:04-cv-1091, 2005 WL 1389875 (M.D. Ala. June 10, 2005)........................................17

*United States v. Gonzalez*,
    520 U.S. 1 (1997)................................................................................5-6

*Yelverton v. Homes at Potomac Greens Assocs. L.P. (In re Yelverton)*,
    Adv. Proc. No. 10-10001, 2010 WL 1688403 (Bankr. D.D.C. Apr. 22, 2010)......................14

Statutes

11 U.S.C. § 502(d) ................................................................................ *passim*

11 U.S.C. § 544 ................................................................................8, 10

11 U.S.C. § 547 ................................................................................8, 11

11 U.S.C. § 548 ................................................................................8, 10, 11

11 U.S.C. § 550 ................................................................................8

12 U.S.C. § 1818(b) ................................................................................5

12 U.S.C. § 1828(u) ................................................................................ *passim*

<u>Page</u>

<u>Regulations, Rules and Other Authorities</u>

12 C.F.R. § 325.6(a) ........................................................................................................5

Fed. R. Bankr. P. 2004 ..................................................................................................16

Fed. R. Civ. P. 12(c) ........................................................................................................1

Fed. R. Civ. P. 15(a)(2) ..................................................................................................17

Fed. R. Civ. P. 16(b)(4) ..................................................................................................17

H.R. Conf. Rep. 106-434 (1999), *reprinted in* 1999 U.S.C.C.A.N. 245 ................................5, 6, 8

Webster's Third New International Dictionary (1976) ................................................. 5-6

Defendant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully submits this reply memorandum in further support of its motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## PRELIMINARY STATEMENT

In its effort to stave off dismissal of its legally meritless avoidance claims, plaintiff The Colonial BancGroup, Inc. ("BancGroup") distances itself from the claims expressly asserted in its own amended complaint, improperly argues facts that are nowhere found in that pleading, advocates for an interpretation of a federal statute that contradicts its plain language, and, most troublingly, misrepresents to this Court the substantial information that has been at its disposal for over a year as the result of the FDIC-Receiver's cooperative efforts.  Plaintiff's obfuscatory tactics do not, however, alter the conclusion that all of its avoidance claims should be dismissed.

First, BancGroup's arguments against application of 12 U.S.C. § 1828(u) in this case contradict the express language of that statute.  Contrary to BancGroup's contentions, section 1828(u) does not require the existence of a capital "directive" but instead only requires that there have been a "*direction issued in writing* by a Federal banking agency" that a bank increase its capital in order for the statutory prohibition on avoidance claims to apply.  *See* 12 U.S.C. § 1828(u)(1)(A) (emphasis added).  There can be no serious dispute that Colonial Bank's December 15, 2008 memorandum of understanding included such a written *direction* within the meaning of section 1828(u), whether or not that written "direction" would also qualify as a "directive" for other purposes under other federal banking laws.  BancGroup's claims against the FDIC-Receiver as to any challenged transfer on or after December 15, 2008 therefore are expressly barred by the statute.

Second, and similarly, by its plain language section 1828(u) prohibits both "a claim . . . for the return of assets" and one "for monetary or *other legal or equitable relief* in connection with" any challenged transfer.  12 U.S.C. § 1828(u)(1) (emphasis added).  There is no way to square this broad and unambiguous statutory language with BancGroup's contention that it may pursue avoidance claims against the FDIC-Receiver solely in order to bar the FDIC-Receiver's recovery on unrelated bankruptcy claims (including, for example, claims with respect to $253 million in federal tax refunds).  In attempting to invoke section 502(d) of the Bankruptcy Code to prohibit such recoveries, BancGroup unquestionably seeks "other legal or equitable relief" against the FDIC-Receiver "in connection with" the challenged transfers, which is expressly prohibited by section 1828(u).  Under the language of section 502(d) itself, the remedy the section affords is only available once a creditor has been determined to be "liable" to the debtor's estate, which only can be determined upon entry of a judgment that can never be obtained against a "Federal banking agency" such as the FDIC-Receiver when section 1828(u) applies.

Third, in addition to the prohibition of section 1828(u), BancGroup's claims for recovery relating to $300 million in REIT preferred securities also must be dismissed because the securities never became "property of the estate" for purposes of any type of avoidance claim. There is no dispute that the securities were not owned by BancGroup before an Exchange Event was declared by federal banking regulators, and BancGroup was given no discretion under the Exchange Agreement to do anything with the securities other than contribute them immediately to Colonial Bank upon the occurrence of an Exchange Event.  Given this contractual constraint on BancGroup's discretion, the "control test" recognized by the Eleventh Circuit excludes the

securities from the property of BancGroup's bankruptcy estate whether the transfer of the securities is challenged as a preference or a fraudulent transfer.

Finally, BancGroup offers no argument that its current amended complaint has set forth the type of factual allegations required to sustain its avoidance claims for transfers pre-dating December 15, 2008. Instead, BancGroup attempts to overwhelm the Court with a discussion of extraneous facts concerning alleged criminal misconduct that was undertaken at Colonial Bank – while the Bank was subject to BancGroup's oversight and control – that are nowhere to be found in its pleading. It is well-recognized that a complaint cannot be amended in a brief in opposition to a motion to dismiss. The claims as pleaded should be dismissed.

Moreover, the dismissal should be with prejudice. BancGroup already has amended its complaint once, and the deadline for amending pleadings in this action expired on March 1, 2011 (one week after the FDIC-Receiver filed this motion). *See* Scheduling Order dated January 4, 2011 [Doc. No. 43]. BancGroup has failed to serve a single discovery request during the thirteen-month pendency of this action. In addition, and directly contrary to its representations to this Court, during most of that time it has been in possession of substantial information concerning the matters in dispute that was made available to it by the FDIC-Receiver and other sources. All of these factors support dismissal with prejudice rather than granting leave to replead.

**ARGUMENT**

**THE AVOIDANCE CLAIMS SHOULD BE DISMISSED
WITH PREJUDICE**

**I.      Section 1828(u) Bars All Preference and Fraudulent Transfer Claims Challenging
Transfers Made to Colonial Bank on or After December 15, 2008.**

BancGroup's attempt to portray 12 U.S.C. § 1828(u) as a "limited defense" that would

have almost no application to the very disputes the statute was intended to prevent is in obvious

conflict with the plain language of the statute and should be rejected.  Moreover, there is no way

to view the avoidance claims asserted in the amended complaint to be mere "affirmative

defenses," as BancGroup now argues, nor would such a recharacterization make any difference

to the legal analysis.

**A.      Section 1828(u) Requires a "Direction in Writing" to Increase Capital.  It
Does Not Require a Capital "Directive."**

The centerpiece of BancGroup's argument is that the December 15, 2008 memorandum

of understanding between Colonial Bank and the FDIC allegedly did not include a capital

"directive" within the meaning of FDIC regulations and other federal banking laws.  According

to BancGroup, this means that 12 U.S.C. § 1828(u) allows it to pursue avoidance claims against

the FDIC-Receiver for transfers that were made to Colonial Bank before June 2009, when the

FDIC issued a cease and desist order that BancGroup admits is the type of written direction that

triggers application of section 1828(u).  *See* Pl. Opp. at 21.  To reemphasize the point,

BancGroup uses the word "directive" (in quotation marks) a total of ten times in its brief, *see* Pl.

Opp. at 16, 20-21, and even asserts that:  "The term 'directive' is not defined in the statute and

the legislative history uses the term without explanation," *id.* at 20.

This argument is grossly misleading.  Nowhere does section 1828(u) use the word

"directive" that is the focus of BancGroup's statutory argument.  By its plain language, section

1828(u) prohibits claims against the FDIC-Receiver for transfers to a depository institution made when that institution "is subject to *any direction issued in writing* by a Federal banking agency to increase its capital."   12 U.S.C. § 1828(u)(1)(A) (emphasis added); *see also* H.R. Conf. Rep. 106-434, at 144, 160-61 (1999), *reprinted in* 1999 U.S.C.C.A.N. 245.

Nothing in the text states that the requisite *written direction* must be a capital "directive" within the meaning of the FDIC's "capital maintenance" regulations.  *See* 12 C.F.R. § 325.6(a). Nor does anything in the statutory text provide that the required written direction must be contained in a regulatory document that is deemed to be "enforceable" under section 8(b) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(b).  Nothing in the legislative history supports these assertions either.  *See* H.R. Conf. Rep. 106-434, at 144, 160-61 (1999), *reprinted in* 1999 U.S.C.C.A.N. 245, 276.

There can be no serious dispute that the "Capital" provision of the December 15, 2008 memorandum of understanding constitutes a "direction in writing [to Colonial Bank] by a Federal banking agency to increase its capital."  12 U.S.C. § 1828(u)(1)(A).  That provision is in writing, was imposed on Colonial Bank by the FDIC which is a "Federal banking agency," and requires that Colonial Bank "shall have" the required capital ratios by specified dates.  *See* Clarke Decl., Exh. A, ¶ 14.  Nothing more than this is required to invoke section 1828(u).

Congress could have chosen to limit the scope of the statute in the manner BancGroup advocates, but it chose to do precisely the opposite.  Section 1828(u) is triggered by "*any direction in writing*," not just the specific types of written "directives" that BancGroup discusses in its opposition brief.  As the Supreme Court has recognized, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately, of whatever kind.'" *United States v. Gonzalez*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International

Dictionary 97 (1976)); *see, e.g., Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 220 (2008) ("Congress' use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind.").

The breadth of the language that was used in the statute conforms to congressional intent, in enacting section 1828(u), to protect the FDIC and its deposit insurance fund "from claims by the bankruptcy trustee of a depository institution holding company or other person for the return of capital infusions." H.R. Conf. Rep. 106-434, at 161, *reprinted in* 1999 U.S.C.C.A.N. at 276. Such an intent would not be served by a construction of the statute's plain language that would permit a bankrupt holding company to evade its application based on the type of rhetorical misdirection attempted by BancGroup here.

### B.    Section 502(d) of the Bankruptcy Code Is Not Excluded from the Reach of 12 U.S.C. § 1828(u).

BancGroup's second argument is equally meritless, namely, that section 1828(u) somehow permits an "affirmative defense" under section 502(d) of the Bankruptcy Code to prevent the FDIC-Receiver's recovery on unrelated bankruptcy claims based on the same challenged downstream transfers. To the contrary, whatever "relief" might be available to a bankrupt debtor under section 502(d) of the Bankruptcy Code is expressly prohibited against a Federal banking agency to the extent it is based on a transfer that is subject to section 1828(u), which expressly prohibits claims against Federal banking agencies for "other legal or equitable relief in connection with" a challenged transfer in addition to claims for monetary damages or recovery of assets.

Section 502(d) of the Bankruptcy Code provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522 (f), 522 (h), 544, 545, 547, 548, 549,

> or 724 (a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, *for which such entity or transferee is liable* under section 522 (i), 542, 543, 550, or 553 of this title

11 U.S.C. § 502(d) (emphasis added).  "[T]the purpose of section 502(d) is to ensure compliance with judicial orders by totally disallowing any claim filed by a creditor that is *liable* for a preferential or fraudulent transfer -- unless the creditor first pays the amount due to the estate." *Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Group, Inc.)*, 331 B.R. 580, 587 (Bankr. D. Del. 2005), *reconsid. denied*, 335 B.R. 77 (Bankr. D. Del. 2005) (emphasis added); *see Holloway v. Internal Rev. Svc. (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003) (§ 502(d) does not provide affirmative relief but is merely "intended to have the coercive effect of insuring compliance with judicial orders").

"In order to sustain a section 502(d) defense to a claim, the debtor must first establish that the creditor *is liable* for an avoidable transfer."  *PRS Ins.*, 331 B.R. at 587 (emphasis added) (citing *Holloway*, 340 F.3d at 708).  Therefore, "a debtor wishing to avail itself of the benefits of section 502(d) must first obtain a judicial determination on the preference complaint."  *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001); *see Springfield Assocs., L.L.C. v. Enron Corp. (In re Enron Corp.)*, 379 B.R. 425, 438 (S.D.N.Y. 2007); *Springel v. Prosser (In re Prosser)*, Adv. Proc. No. 08-03002, 2009 WL 3270765, at *13-14 (Bankr. D.V.I. Oct. 9, 2009) ("it is premature to disallow Trustee Carroll's claim.  There has been no failure to comply with a judgment to warrant application of § 502(d) at this point").

In this case, however, BancGroup is not permitted to seek such a judgment against the FDIC-Receiver.   Under section 1828(u) "[n]o person *may bring a claim* against a Federal banking agency (including in its capacity as conservator or receiver)" for the return of an avoidable transfer, for monetary damages with respect to such a transfer, or for "*other legal or equitable relief* in connection with such transfer."  12 U.S.C. § 1828(u)(1) (emphasis added).

7

Section 1828(u) expressly deprives BancGroup of the remedy afforded under section 502(d) of the Bankruptcy Code with respect to any downstream transfer falling within the scope of the provision, *i.e.*, every alleged downstream transfer made to Colonial Bank on or after December 15, 2008, because subjecting the FDIC-Receiver to the compulsory effect of section 502(d) on the basis of any downstream transfer that falls within the scope of the section 1828(u) prohibition would be to impermissibly afford BancGroup "other legal or equitable relief" based on that transfer.[1]

Nor can BancGroup escape the consequences of section 1828(u) by belatedly attempting to reframe its claims as supposed "affirmative defenses." In the first place, the amended complaint clearly and emphatically describes each of the avoidance claims as "claims" against the FDIC-Receiver and not as "affirmative defenses." *See* Compl., ¶ 43 ("BancGroup asserts *voidable transfer claims* pursuant to Sections 544, 547 and 548 of the Bankruptcy Code in an amount not less than $899,867,786.00."); *id.*, ¶ 51 (BancGroup . . . asserts *a claim* pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code to avoid such transfer or divestiture, and to recover the REIT Preferred or the value thereof"); *id.*, ¶ 56 ("BancGroup *is entitled to recover*

---

[1] For this and other reasons, BancGroup's attempt to analogize the prohibition of section 1828(u) with a statute of limitations is inapt. Unlike a statute of limitations, which only bars a claim that once might have been brought if it is not commenced in time, section 1828(u) *always* prohibits claims seeking "other legal or equitable relief in connection with" a challenged transfer. The difference reflects congressional intent to protect the FDIC as receiver for failed depository institutions (and other federal bank regulators) from all types of relief in connection with avoidance litigation brought by bankrupt holding companies or their bankruptcy trustees. *See* H.R. Conf. Rep. 106-434, at 161, *reprinted in* 1999 U.S.C.C.A.N. at 276. In addition, the cases that have allowed a defensive use of section 502(d) after a statute of limitations has expired on an underlying avoidance action ignore the express language of section 502(d), which expressly states that the section only applies if the transferee fails to turn over the amount for which the transferee "is liable." *See In re Marketing Assocs. of Amer., Inc.*, 122 B.R. 367, 369 (Bankr. E.D. Mo. 1991). As already discussed, courts have recognized that this statutory language requires a judgment to be obtained against the transferee before section 502(d) can have effect. *See supra* at 6-7 (collecting cases).

each Transfer from Colonial Bank as a voidable preference or other avoidable transfer"). The "prayer for relief" in the amended complaint similarly demands "an order directing the FDIC-Receiver *to pay the Claims* from the assets of the Receivership," but, notably, it does not request that the Court enter any order under section 502(d) of the Bankruptcy Code. *See* Compl., at 21 (emphasis added).

In any event, as discussed, application of section 502(d) requires an order adjudging the transferee liable for an avoidable transfer, and such an order only can be obtained by asserting a "claim" that can never be brought against the FDIC-Receiver for the challenged transfers. However it may be styled, the remedy afforded by section 502(d) clearly would constitute "other legal or equitable relief in connection with" the challenged transfers and is barred by section 1828(u).

## II.    The REIT Preferred Securities Were Never Property of the Estate and Are Not Subject to Any Type of Avoidance Claim.

BancGroup apparently now concedes that section 1828(u) bars all of its claims against the FDIC-Receiver for avoidance or recovery with respect to the transfer to Colonial Bank of $300 million in REIT preferred securities.  In addition, however, those claims should be dismissed because that transfer did not involve property of the estate.  Neither the Bankruptcy Code nor the decisions BancGroup relies on support its attempt to draw some distinction between preference claims and fraudulent transfer claims in this regard.[2]

---

[2] BancGroup's opposition brief includes the heading "Avoidance of REIT Preferred Transfer Not Barred by § 1828(u)," Pl. Opp. at 21, but in the same section BancGroup concedes that section 1828(u) bars recovery against the FDIC-Receiver for the REIT preferred securities whether asserted as a preference or a fraudulent transfer, *id.* at 23. This admission is compelled by the statute, which provides exactly that. *See* 12 U.S.C. § 1828(u)(2)(A) (definition of "claim" includes claims for avoidance and recovery of "preferential or fraudulent transfers or conveyances").  BancGroup's assertion that it "does not seek affirmative recovery from the FDIC-Receiver based on the preferential transfer of the REIT Preferred Securities" is

Under the "control test" that has been recognized by the Eleventh Circuit and other courts, property transferred by a debtor pre-petition is excluded from "property of the estate" for avoidance claims if the debtor lacked "(1) the power to designate which party will receive the funds, and (2) the power to actually disburse the funds at issue to that party." *3V Capital Master Fund Ltd. v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.)*, __ B.R.__, 2011 WL 522008 at *24 (S.D. Fla. Feb. 11, 2011). The control test requires a court to review "the actual documents governing the transactions." *Id.* The rationale for this rule is that "without the requisite control, the subject property could not have been used by the debtor to pay another creditor, and the transfer thus did not decrease the value of the debtor's estate." *Id.* (discussing *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1181-82 (11th Cir. 1987)).

Although BancGroup asserted claims for recovery with respect to the REIT preferred securities as both a preference and a fraudulent transfer, *see* Compl., ¶ 51, it now apparently concedes that it cannot possibly sustain a fraudulent transfer claim with respect to the securities because of the "control test." It contends, however, that there is some distinction in the treatment of preferences and fraudulent transfers under the "control test," when in fact there is none under the circumstances presented here.

Under the Bankruptcy Code, an essential element of both a preference claim and a fraudulent transfer claim is that the challenged transfer must have involved property of the debtor's estate. *See* 11 U.S.C. § 544(b)(1) (state law fraudulent transfer claims) (trustee may avoid "any transfer of an interest of the debtor in property . . ." that meets the statutory criteria); 11 U.S.C. § 547(b) (preferences) (setting forth requirements for avoidance as a preference of "any transfer of an interest of the debtor in property"); 11 U.S.C. § 548(a) (fraudulent transfers)

---

demonstrably false, as the allegations in its amended complaint make clear. *See supra* at 8-9 (discussing allegations directly to the contrary).

("trustee may avoid any transfer . . . of an interest of the debtor in property . . .").  The rationale for allowing recovery of such transfers is also the same for both preferences and fraudulent transfers:  "to prevent a debtor from diminishing, to the detriment of some or all creditors, funds that are generally available for distribution to creditors."  *See Sanchez*, 813 F.2d at 1181.

In *Sanchez*, the Eleventh Circuit acknowledged that the analysis of whether a debtor had "control" over property could be different for purposes of a preference claim than for a fraudulent transfer claim in the sense that a preferential transfer reduces or satisfies an obligation to an existing creditor and therefore implies some exercise of control by the debtor over the disposition of property at issue.  *Sanchez*, 813 F.2d at 1177.  However, the *Sanchez* court itself recognized that any such presumption would be defeated by "proof to the contrary," and the *Sanchez* court cited a number of preference decisions in which the "control" test was applied to preference claims.  *Id.* at 1181 (collecting cases); *see also, e.g., Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 185 (2d Cir. 2007) ("where a debtor receives funds subject to a clear obligation to use that money to pay off a preexisting debt, and the funds are in fact used for that purpose, those funds do not become property of the estate and the transfer cannot be avoided in bankruptcy"); *Adams v. Anderson (In re Superior Stamp & Coin Co., Inc.)*, 223 F.3d 1004, 1007-09 (9th Cir. 2000) (applying earmarking doctrine to defeat preference claims).

In this case, the "proof to the contrary" that the *Sanchez* decision contemplates is undisputed.  The provisions of the Exchange Agreement unconditionally obligated BancGroup to "contribute all of the Series A Company Preferred Stock then outstanding to the Bank as a capital contribution."  Exchange Agreement, § 2(e).  Moreover, this unconditional obligation was required to occur "[e]ffective on the date and time of the Conditional Exchange," *id.*, § 2, in other words, simultaneously with the occurrence of the very same event that would result in

BancGroup having any constructive possession of the securities in the first place.  Under the Exchange Agreement, BancGroup had no discretion to use the securities to pay its other creditors or to satisfy any other obligations.  Indeed, the amended complaint itself acknowledges that BancGroup did precisely what it was bound by contract to do – immediately contribute the REIT preferred securities to Colonial Bank on August 11, 2009 when the Exchange Event was declared.  *See* Compl., ¶¶ 48-50.[3]

BancGroup's only answer to the "control" test, besides its insupportable distinction between a preference and a fraudulent transfer, is to pose a hypothetical in which it filed for bankruptcy after an Exchange Event occurred but before it contributed the REIT preferred securities had been contributed to Colonial Bank.  *See* Pl. Opp. at 23.  This is not what happened (nor could it have for the reasons already discussed).  In addition, however, courts applying the "control test" have rejected similar arguments.  *See Superior Stamp & Coin*, 223 F.3d at 1009 ("The fact that Superior may have had the *power* to divert the loan after it was deposited into Superior's account does not amount to 'control' of the funds by Superior. . . . the proper inquiry is not whether the funds entered the debtor's account, but whether the debtor had the right to disburse the funds to whomever it wished . . .") (emphasis in original).

Finally, the *Sanchez* court also noted the danger that by presuming that a debtor had "control" over transferred property, other creditors could "receive a windfall in the form of funds

---

[3] In one of many less than candid comments, BancGroup suggests in a footnote that "[t]here remains a question whether the REIT Preferred Securities were in fact transferred."  Pl. Opp. at 12 n.15.  In fact, however, BancGroup has reported publicly that its general counsel certified on August 13, 2009 that the transfer of the REIT preferred securities had been completed two days earlier, on August 11, 2009.  *See* The Colonial BancGroup, Inc. Form 8-K dated November 3, 2010 (attaching third amendment to Schedule B, Personal Property).  In order for there to be any "question" about the transfer, BancGroup would be required to show that its own general counsel was either mistaken in making this certification or knowingly created a false record for a regulated financial institution.

that simply passed through the debtor's possession but in fact were not the property of the debtor." *Sanchez*, 813 F.2d at 1181.  Even if BancGroup's hypothesis could have had the effect it urges, the result would be the very type of windfall for BancGroup's creditors that the *Sanchez* court warned should be protected against, since under the Exchange Agreement BancGroup never had any reasonable expectation of having an ownership interest in the REIT preferred securities at any time.

### III.   BancGroup's Other Avoidance Claims Must Be Dismissed for Failure to State a Claim.

Finally, BancGroup offers no substantive response in defense of its fraudulent transfer and preference claims for transfers that preceded December 15, 2008.

*Insolvency.*  With respect to its patently inadequate allegations of insolvency, BancGroup does not dispute that its amended complaint alleges nothing more than the unadorned elements of the Bankruptcy Code causes of action for preferences and constructive fraudulent transfers, a pleading strategy that the Supreme Court expressly rejected in *Iqbal* and *Twombly*.  *See Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

BancGroup asserts, without citation to any authority, that "[a]n allegation of insolvency of an entity is not the type of allegation that is susceptible to factual elaboration at the pleading stage."  Pl. Opp. at 24.  In fact, however, this is precisely the pleading burden that an avoidance plaintiff bears under the facial plausibility standard of *Iqbal* and *Twombly*.  "[A] complaint alleging a constructive fraud claim based on insolvency . . . must plead facts from which an inference of insolvency can be drawn. . . .  Conclusions are not enough." *Marwill v. Oncale (In re Life Fund 5.1 LLC)*, No. 09 B 32672, 2010 WL 2650024, at *7 (Bankr. N.D. Ill. June 30,

2010) (citations omitted); *see Yelverton v. Homes at Potomac Greens Assocs. L.P. (In re Yelverton)*, Adv. Proc. No. 10-10001, 2010 WL 1688403, at *3 (Bankr. D.D.C. Apr. 22, 2010) ("The only mention of insolvency is Yelverton's recitation of the § 548(a)(1)(B)'s avoidance test. And, for the reasons stated above, this conclusory assertion is insufficient to survive the motion to dismiss."); *Angell v. Burrell (In re Caremerica, Inc.)*, 409 B.R. 759, 767 (Bankr. E.D.N.C. 2009) ("Although the trustee's allegations mirror the elements of § 548(a)(1)(B), the trustee fails to support these allegations with factual content describing the consideration received by each transferor or facts supporting the debtors' insolvency at the time of the transfers. In the absence of such factual content, the trustee cannot show that the avoidance of transfers under a theory of constructive fraud is plausible.").

**_Failure to Identify Transfers._**   BancGroup similarly fails to offer any defense for its failure to identify a single transfer that it seeks to avoid as an alleged preference. In its opening brief, the FDIC-Receiver acknowledged that pre-*Iqbal* decisions took different approaches to the pleading requirements for preference claims. *See* FDIC-Receiver Mem. at 22. Under any conceivable pleading standard following *Iqbal*, however, a preference complaint that does not identify even one challenged transfer should be dismissed.

**_BancGroup's Alleged Lack of Access to Information._**   BancGroup's most scurrilous contention is that it "has still not received from either the FDIC-Receiver or BB&T electronic records containing historical financial information concerning BancGroup and Colonial Bank (including intercompany transactions between them) that, if made available, would allow BancGroup to provide the level of detail in pleading as insisted upon by the FDIC-Receiver." Pl. Opp. at 26. This statement, and others like it in BancGroup's brief, are demonstrably false.

Among other things, these statements are contradicted by the following facts:

- During fourth quarter 2009, BancGroup removed 72 boxes of records from the former headquarters of Colonial Bank and transported those records to its counsel's offices in Atlanta, where it since has had unfettered access to them.[4]

- From March 3 to March 5, 2010, and again on March 8 and 10, 2010, BancGroup's counsel and its chief restructuring officer reviewed all 208 boxes of hard copy records in the possession of the FDIC-Receiver that were located on the premises of the former Colonial Bank headquarters in Montgomery, Alabama.  BancGroup reported that it had completed its review of those boxes on March 10, 2010.  While it was there, with the permission of the FDIC-Receiver and BB&T, BancGroup also reviewed substantial additional collections of documents that were located elsewhere in the building and that were not in the possession, custody or control of the FDIC-Receiver.

- Days after that review, on March 16, 2010, the FDIC-Receiver offered to copy all documents identified by BancGroup during BancGroup's onsite review as part of an imaging project that the FDIC-Receiver would be undertaking in the following week.  BancGroup refused to bear the costs of such copying and has never suggested alternate arrangements for making copies at its expense rather than at the expense of the FDIC-Receiver or BB&T.  BancGroup's refusal to bear the reasonable costs of copying the records in question is the only reason that it is not now in possession of the records it identified.

- On Friday March 12, 2010, BancGroup requested that the FDIC-Receiver permit the transfer of 30 boxes of benefits related documents to BancGroup's counsel.  The FDIC-Receiver consented on March 24, 2010, and the boxes have been in BancGroup's possession since that time.

- The FDIC-Receiver coordinated with BB&T, its outside counsel and the United States Department of Justice to ensure that BancGroup received copies of BB&T's production of historical records of Colonial Bank that were produced by BB&T in response to subpoenas from the DOJ.  In total, BancGroup received 293,092 pages of records as a result of this production beginning on April 9, 2010 and ending on July 10, 2010.

---

[4] In contrast, for over a year BancGroup resisted the FDIC-Receiver's requests to review those records based on various arguments.  The FDIC-Receiver was only permitted to review the records several weeks ago, even though they were subject to a document request served by the FDIC-Receiver in this action in July 2010.  Even then, the FDIC-Receiver was not permitted to review the contents of 13 compact discs containing an indeterminate number of records that were included within the boxes.

- The FDIC-Receiver coordinated with BB&T and its outside counsel to provide BancGroup with copies of tax and accounting records from Colonial Bank's legacy systems.

  - On August 2, 2010, BB&T produced a hard drive containing the accounting and tax data that BancGroup had sought in the subpoena issued under Bankruptcy Rule 2004.[5]

  - On November 23, 2010, BB&T produced three additional hard drives containing more than one terabyte of data reflecting historical accounting information that had been requested by BancGroup in the Rule 2004 subpoena.[6]

In its brief, BancGroup fails to mention that it has had access to all of the foregoing information, in many cases for over a year. BancGroup has never sought leave to further amend its complaint based on any of that information.

In addition, BancGroup does not mention that it has not served a single request for discovery in this action despite the pendency of this case for thirteen months and notwithstanding the scheduled trial date in October 2011. The FDIC-Receiver is not responsible for BancGroup's failure to prosecute litigation that BancGroup itself commenced.

## IV.   Dismissal Should Be With Prejudice.

BancGroup's opposition brief is replete with factual material that is nowhere to be found in its amended complaint. It is unclear what aspects of this material BancGroup considers to be pertinent to the arguments presented here, but it is not incumbent upon the FDIC-Receiver or this Court to determine that. Courts "cannot consider additional facts asserted in a party's

---

[5] BancGroup suggests that the FDIC-Receiver "has been less than cooperative in assisting" BancGroup in collecting data. *See* Pl. Opp. at 7 n.7. The record shows otherwise, as the facts above make clear. The FDIC-Receiver objected to BancGroup's wholly improper motion for discovery from BB&T under Bankruptcy Rule 2004 because that motion ignored this history and failed to take into account the FDIC-Receiver's own interests in the records at issue.

[6] A terabyte of data is 1 trillion bytes or 1,000 gigabytes of data. To provide some perspective on the amount of data this involves, one internet commentator has estimated that a 1 terabyte hard drive could hold 1,000 copies of the Encyclopedia Britannica. *See* www.whatsabyte.com.

memorandum in opposition to a dismissal motion." *Thomas v. Ala. State Dep't of Mental Health & Mental Retardation*, No. 2:04-cv-1091, 2005 WL 1389875, at *4 (M.D. Ala. June 10, 2005). It is "axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." *Id.* n.8 (quoting *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004)).

In its opposition brief, BancGroup observes that a party ordinarily "must be given at least one opportunity to amend before the district court dismisses the complaint." Pl. Opp. at 4 (citations omitted). However, BancGroup already availed itself of its one amendment when it filed the amended complaint on May 28, 2010. *See* Doc. No. 20. Further, the deadline for amending pleadings in this action was March 1, 2011, one week *after* the FDIC-Receiver filed this motion to dismiss. *See* Scheduling Order, Doc. No. 43. BancGroup must establish "good cause" to be relieved from the operation of this pre-trial deadline. *See* Fed. R. Civ. P. 16(b)(4); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). It cannot make that showing, however, because BancGroup has not "perused and examined discovery in a [] diligent fashion in this matter." *Target Brands, Inc. v. Russell Petroleum Corp.*, No. 2:07-cv-1113-MEF, 2008 WL 4701316, at *1 (M.D. Ala. Oct. 23, 2008); *see also Sosa*, 133 F.3d at 1418 ("[G]ood cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'") (quoting Advisory Committee notes). BancGroup's belated plea for leave to further amend should be denied.[7]

---

[7] Even if this Court were inclined to permit BancGroup latitude despite its lack of diligence in prosecuting this action, BancGroup should be required to file a motion for leave to amend the complaint as required under Federal Rule of Civil Procedure 15(a)(2). Only with the benefit of a motion that includes the proposed amendments to BancGroup's complaint will the FDIC-Receiver and this Court be in a position to evaluate whether such a further amendment of the complaint would be futile.

## CONCLUSION

For all of the foregoing reasons, and for those set forth in its opening brief, the FDIC-Receiver respectfully requests that all of the claims relating to allegedly avoidable transfers asserted in the amended complaint be dismissed with prejudice and that the Court grant the FDIC-Receiver such other and further relief as it may deem just and proper.

Dated:  Montgomery, Alabama                    Respectfully submitted,
       April 18, 2011

                                          /s/ Michael A. Fritz, Sr.
                                       Michael A. Fritz, Sr.
                                       Fritz, Hughes & Hill LLC
                                       1784 Taliaferro Trail, Suite A
                                       Montgomery, Alabama  36117
                                       (334) 215-4422

                                            - and -

                                       John J. Clarke, Jr.
                                       Thomas R. Califano
                                       Michael D. Hynes
                                         Spencer Stiefel
                                         DLA Piper LLP (US)
                                       1251 Avenue of the Americas
                                       New York, New York  10020-1104
                                       (212) 335-4500

                                       Attorneys for the
                                         Federal Deposit Insurance Corporation
                                         as Receiver for Colonial Bank

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of April 2011, the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  The following counsel for plaintiff The Colonial BancGroup, Inc. will be served electronically:

**C. Edward Dobbs**
**Rufus T. Dorsey IV**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303

**Jordan Dorman Walker , Jr.**
Balch & Bingham LLP
P O Box 78
Montgomery, AL 36101

**William Clark Watson**
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203


            /s/ Michael A. Fritz, Sr.
              Michael A. Fritz, Sr.