UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

---

THE COLONIAL BANCGROUP, INC.,

    Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
COLONIAL BANK,

    Defendant.

---

Case No. 2:10-cv-00198

**PLAINTIFF'S RESPONSE TO FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY NON-PARTY PRICEWATERHOUSECOOPERS LLP**

Plaintiff The Colonial BancGroup, Inc. ("BancGroup"), submits this response to the motion (the "Motion") of the Federal Deposit Insurance Corporation, in its capacity as receiver for Colonial Bank (the "FDIC-Receiver") to compel the production of documents by non-party PricewaterhouseCoopers LLP ("PwC"), and in support hereof, respectfully states as follows:

**Preliminary Statement**

1. Contrary to the numerous accusations of "bad faith" and attempts to "obstruct and delay" included in the Motion, BancGroup agreed to the production of the vast majority of documents sought by the FDIC-Receiver without any review subject to the protection afforded by Federal Rule of Evidence 502(d) ("FRE 502(d)"). The FDIC-Receiver's conflicts counsel appeared to agree to such a construct, only to subsequently and inexplicably alter course and file the Motion after conferring with the FDIC-Receiver's lead counsel in these actions.

2. With respect to a smaller subset of post-petition documents, BancGroup could not agree to such terms. Post-petition, BancGroup retained PwC to provide tax advisory services and, in serving in that role, PwC has consulted extensively with BancGroup's counsel concerning the present litigation with the FDIC-Receiver over ownership of approximately $250 million in anticipated tax refunds (the "Tax Refunds"). Instead, BancGroup requested that such documents be produced by PwC to BancGroup in the first instance so that BancGroup could review and withhold any attorney work product. This position was clearly expressed to the FDIC-Receiver on numerous occasions. Apparently undeterred, the FDIC-Receiver states in conclusory fashion that the "work product privilege is inapplicable" and that it does not seek "records prepared in anticipation of any litigation." However, a cursory review of an index of such post-petition documents provided by PwC to BancGroup and the FDIC-Receiver indicates that the sought after post-petition documents likely contain BancGroup "opinion" attorney work product. The Eleventh Circuit has found that such materials are entitled to "nearly absolute" immunity. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1421 (11th Cir. 1994).

3. The filing of this Motion, notwithstanding BancGroup's very reasonable proposed terms, calls into question whether the FDIC-Receiver is in fact seeking relevant factual discovery, or whether it instead seeks a litigation advantage by obtaining access to materials the Supreme Court (and Congress) has afforded the highest levels of protection: "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

## Background

4. On August 14, 2009 (the "Receivership Date"), Colonial Bank was closed by the Alabama State Banking Department, and the FDIC-Receiver was appointed as its receiver.

5.      In connection with its appointment, the FDIC-Receiver took possession of all documents and ESI relating to Colonial Bank as well as substantially all of the documents and ESI relating to the Debtor and its other subsidiaries.  The FDIC-Receiver did not exercise any restraint in limiting its seizure of records and disposition thereof to the property and records of Colonial Bank.

6.      The FDIC-Receiver sold and assigned substantially all of the former assets of Colonial Bank to Branch Banking and Trust Company ("BB&T") pursuant to a Purchase and Assumption Agreement dated as of August 14, 2009, among the FDIC-Receiver, the FDIC (in its corporate capacity) and BB&T.  Again, the FDIC-Receiver did not differentiate between the records, documents and ESI of Colonial Bank and the Debtor in implementing this transaction and transferred substantially all of the documents and ESI of the Debtor to BB&T.

7.      On August 25, 2009 (the "Petition Date"), BancGroup filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  Prior to the Petition Date, BancGroup was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama.  BancGroup was the holding company for Colonial Bank prior to the order closing Colonial Bank.

8.      On June 2, 2011, the Bankruptcy Court entered an order confirming BancGroup's second amended plan of liquidation (the "Plan"), which went effective on June 3, 2011.

### BancGroup's Receivership Proof of Claim

9.      On November 19, 2009, BancGroup filed a proof of claim in the receivership proceeding for Colonial Bank (the "Receivership Proof of Claim").  On January 6, 2010, the FDIC-Receiver disallowed BancGroup's Receivership Proof of Claim.  On March 5, 2010, BancGroup filed the Complaint in this action contesting the FDIC-Receiver's disallowance of

the Receivership Proof of Claim (the "FIRREA Action"), as it was obligated to do pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 within 60 days after the date on which the FDIC-Receiver disallowed BancGroup's Receivership Proof of Claim in order to preserve its rights.  BancGroup filed this Complaint primarily to preserve its defenses to the FDIC-Receiver's claims in BancGroup's Chapter 11 bankruptcy case.  The FDIC-Receiver's claims against BancGroup are before this Court in a parallel proceeding described immediately below.

### FDIC-Receiver's Bankruptcy Proof of Claim

10. On November 30, 2009, the FDIC-Receiver filed its proof of claim in BancGroup's Chapter 11 bankruptcy case (Claim No. 139), and on February 19, 2010, the FDIC-Receiver filed an amendment to that proof of claim (together, the "Bankruptcy Proof of Claim"). In the Bankruptcy Proof of Claim, the FDIC-Receiver has asserted an alleged priority claim arising under Sections 365(o) and 507(a)(9) of the Bankruptcy Code totaling approximately $1 billion (which claim was denied by the Bankruptcy Court and is on appeal to this Court) and other contingent and unliquidated claims that allegedly total $2.2 billion.

11. On March 4, 2010, BancGroup filed an objection in the Bankruptcy Court to the FDIC-Receiver's Bankruptcy Proof of Claim (the "Claim Objection").  The Claim Objection is now before this Court after the Court granted the FDIC-Receiver's motion for withdrawal of the reference.[1]

### Services Provided by PwC to the Debtor

12. PwC is an international partnership that provides various professional services, with a focus on audit and assurance, tax and advisory services.

---

[1] The scheduling orders in the FIRREA Action and the Claim Objection also allow the parties to use discovery in one matter in the other matter.

13. Since no later than 1999, PwC served as the Debtor's independent auditor. PwC's services included, among other things, auditing of the Debtor's annual consolidated financial statements. Separately, prior to the Petition Date, PwC served as the Debtor's tax advisor.

14. The Debtor signed a new engagement with PwC for tax advisory services after the Petition Date and has continued that engagement after confirmation of the Plan. In connection with this engagement, BancGroup has consulted with PwC concerning the Debtor's pending dispute with the FDIC-Receiver over the Tax Refunds.

### BancGroup's Actions in Connection with FDIC-Receiver's Subpoena[2]

15. On June 10, 2011, the FDIC-Receiver sent a letter to BancGroup demanding that BancGroup consent to the production of certain tax-related documents in the possession of the PwC to the FDIC-Receiver pursuant to the Subpoena. That same day, BancGroup responded, indicating that it could not at that time consent to PwC's production of documents which – as set forth in PwC's Objections – could contain BancGroup information protected by the attorney-client privilege or the work product doctrine.[3] As set forth in the letter, because such documents were not in BancGroup's possession, it had not had an opportunity to review the documents for such privileges. BancGroup requested that PwC first produce the materials to BancGroup for review.

16. Subsequently, PwC provided to BancGroup an index of the documents it believed to be responsive to the Subpoena. The index was split into pre-2009 documents ("<u>Pre-Petition Documents</u>") and post-2009 documents ("<u>Post-Petition Documents</u>"). BancGroup consented to

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[3] A copy of this correspondence is attached as Exhibit A hereto.

- 5 -

the production of these indices to the FDIC-Receiver, but again reiterated its request that the documents be produced first to BancGroup so that it could review those materials for privilege.

17. The PwC-produced indices contain electronic file names and are therefore difficult to ascertain to which materials they refer. However, even a cursory review of the Post-Petition Documents index indicate that they include materials which were prepared in anticipation of or during the course of litigation with the FDIC-Receiver over ownership of the Tax Refunds and therefore comprise attorney work product.

18. The index concerning the Pre-Petition Documents contains many more documents and the descriptions are quite cryptic. Thus, it is impossible to ascertain if they may include privileged materials, but BancGroup believes it unlikely to be the case. Moreover, any privilege may well be shared with Colonial Bank as the parties were not adverse to each other in litigation as they are post-petition. Therefore, on June 27, 2011, BancGroup agreed to consent to the production of such materials to the FDIC-Receiver without any review so long as it was done under the protection of FRE 502(d). Conflicts counsel to the FDIC-Receiver appeared to find that agreeable and BancGroup sent a draft FRE 502(d) order to the FDIC-Receiver consistent with forms previously entered by the Court.[4] The Motion contains <u>no mention</u> of this proposal or why the FDIC-Receiver ultimately determined it was unacceptable.

## **Objection**

*It is Highly Likely that the Post-Petition Documents Contain Materials Protected by the Attorney Work Product Doctrine*

19. The Post-Petition Documents appear to contain attorney work product. In several telephonic meet and confers, BancGroup expressed its concern to the FDIC-Receiver that it was

---

[4] Attached as Exhibit B hereto is a copy of email correspondence between counsel to BancGroup, PwC, and the FDIC-Receiver evincing BancGroup's consent to the Pre-Petition Documents being provided to the FDIC-Receiver pursuant to FRE 502(d).

seeking to access such materials which were prepared in the course of litigation with the FDIC-Receiver.  Granting an adversary access to such materials is exactly the scenario the attorney work product doctrine seeks to guard against.  BancGroup simply requests that PwC provide the Post-Petition Documents to BancGroup in the first instance so that it may review the documents and withhold any attorney work product before the documents are produced to the FDIC-Receiver.

20. The Eleventh Circuit has stated that "'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion *by opposing parties* and their counsel.'"  *U.S. Steel & Carnegie*, 17 F.3d at 1421 (quoting *Hickman*, 329 U.S. at 510-11), *modified on other grounds*, 30 F.3d 1347 (11th Cir. 1994) (emphasis added).  The work product doctrine "is distinct from and broader than the attorney-client privilege[ ] ...; it protects materials prepared by the attorney, whether or not disclosed to the client, and it protects material prepared by *agents* for the attorney."  *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979) (emphasis added).

21. Federal Rule of Civil Procedure 26(b)(3) concerns the work-product privilege.  The rule provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).  Furthermore, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000).

22. Moreover, material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as "opinion work product." *U.S. Steel & Carnegie,* 17 F.3d at 1422. Opinion work product enjoys a "nearly absolute immunity" and can be discovered only in very rare and extraordinary circumstances. *Id.*

23. Certain of the Post-Petition Documents likely fall squarely within the attorney work product doctrine, comprising opinion work product. PwC has acted as BancGroup's consultant in connection with this very litigation over the Tax Refunds in which BancGroup is adverse to the FDIC-Receiver. Specifically, BancGroup has consulted PwC on several issues germane to the legal disputes, including, by way of example, the effect rejecting the tax sharing agreement or taking a worthless stock deduction might have on BancGroup's ownership rights to the Tax Refunds. Moreover, BancGroup has consulted with PwC concerning the application of certain Internal Revenue Code regulations concerning loss "absorption," regarding the order in which members' individual losses in a consolidated tax group may be determined to give rise to refunds. Each of the foregoing was done specifically with regard to the Tax Refund dispute. Thus, it is highly likely that the Post-Petition Documents contain the conclusions, opinions, and legal theories of BancGroup's counsel.

24. BancGroup identified to the FDIC-Receiver certain descriptions from the index of Post-Petition Documents which very likely represent attorney work product, including descriptive entries such as: "Worthless Stock summary" and "*Bob Richards Chrysler-Plymouth*, Bankruptcy Consol CB of NOLs." Even if such documents were created by PwC – and BancGroup has no way of knowing without review – to the extent such materials contain the thoughts and opinions of counsel developed in anticipation of litigation, the work product doctrine protects against disclosure. *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir.

2010) (holding that documents created by client's auditor could contain content protected by the attorney work product doctrine).

25. Notably, the FDIC-Receiver is already in possession of BancGroup's 2009 tax return and the amendment to the same return. It was produced by BancGroup to the FDIC-Receiver voluntarily.[5] Notwithstanding the foregoing, with knowledge of BancGroup's good faith claim of work product privilege, the FDIC-Receiver proceeded with its Motion seeking to potentially pierce BancGroup's work product protection.

26. BancGroup requests a reasonable period of time to review the Post-Petition Documents. If turned over to the FDIC-Receiver without regard to attorney work product, the FDIC-Receiver may gain a significant and inequitable advantage in these actions. The depositions that the FDIC-Receiver is concerned about taking place were noticed by the FDIC-Receiver (without regard to BancGroup's preference). If the FDIC-Receiver wishes to adjourn such depositions to allow BancGroup time to review the Post-Petition Documents, BancGroup has no objection.

*The Pre-Petition Documents Should be Produced to BancGroup and the FDIC-Receiver Pursuant to FRE 502(d)*

27. With respect to the Pre-Petition Documents, BancGroup is unable to ensure that no privileged materials are included simply because it has not had any opportunity to review the materials. However, BancGroup believes it unlikely that the Pre-Petition Documents contain privileged materials. Moreover, any privilege may well be shared with Colonial Bank as the parties were not adverse to each other in litigation as they are post-petition. Thus, BancGroup offered to consent to the production of such materials to BancGroup and the FDIC-Receiver pursuant to the protections afforded by FRE 502(d) as the parties have agreed to do so with

---

[5] A copy of this correspondence is attached as Exhibit C hereto.

- 9 -

respect to other documents in these actions. Such a protocol would ensure the FDIC-Receiver receives the materials in a timely matter. Ultimately, the FDIC-Receiver inexplicably refused to agree to this sensible solution.

## Conclusion

28.     BancGroup respectfully requests that the Court order the production of the Pre-Petition Documents to BancGroup and the FDIC-Receiver pursuant to FRE 502(d) and the production of the Post-Petition Documents to BancGroup for review for applicable privileges and grant such other relief as may be just and proper.

Dated:  July 6, 2011

 /s/ Benjamin I. Finestone
One of the Attorneys for Plaintiff,
The Colonial BancGroup, Inc.

Peter E. Calamari, Esq.
Kevin Reed, Esq.
David L. Elsberg, Esq.
Benjamin I. Finestone, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on June 30, 2011, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing as set forth below:

    Charles B. Lee (clee@millermartin.com)

    Jeremy R. Johnson (jeremy.johnson@dlapiper.com)

    John J. Clarke, Jr. (john.clarke@dlapiper.com)

    Michael A. Fritz, Sr. (bankruptcy@fritzandhughes.com)

    Michael D. Hynes (michael.hynes@dlapiper.com)

    Spencer D. Stiefel (spencer.stiefel@dlapiper.com)

    Thomas R. Califano (thomas.califano@dlapiper.com)


    /s/ Benjamin I. Finestone
    One of the Attorneys for Plaintiff,
    The Colonial BancGroup, Inc.