UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re<br><br>**THE COLONIAL BANCGROUP, INC.,**<br><br>Debtor. | Case No. 2:10-cv-0409 (MHT) |
| **THE COLONIAL BANCGROUP, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank,**<br><br>Defendant. | Case No. 2:10-cv-0198 (MHT) |

# RESPONSE OF THE FDIC-RECEIVER TO NOTICE OF SUPPLEMENTAL FACTS FILED BY THE COLONIAL BANCGROUP, INC.

Michael A. Fritz, Sr.
michael@fritzandhughes.com
Fritz, Hughes & Hill LLC
1784 Taliaferro Trail, Suite A
Montgomery, Alabama  36117
(334) 215-4422

John J. Clarke, Jr.
Thomas R. Califano
Michael D. Hynes
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500

Attorneys for the
 Federal Deposit Insurance Corporation,
 as Receiver for Colonial Bank

Dated:  January 17, 2012

Table of Authorities

Page

Cases

*Capital Bancshares v. F.D.I.C.*,
    957 F.2d 203 (5th Cir. 1992) ...................................................................................3, 5

*Clay v. Cummins*,
    77 So. 328 (Ala. 1917) ..................................................................................................2

*Cohen v. Un-Ltd. Holdings, Inc. (In re Nelco, Ltd.)*,
    264 B.R. 790 (Bankr. E.D. Va. 1999) ...........................................................................3

*F.D.I.C. v. Brandt (In re Florida Park Banks, Inc.)*,
    110 B.R. 986 (Bankr. M.D. Fla. 1990) .....................................................................4, 5

*Official Committee of Unsecured Creditors v. PSS S.S. Co.*
    *(In re Prudential Lines, Inc.)*, 928 F.2d 565 (2d Cir. 1991) .....................................2, 3

*Reading Co. v. Brown*,
    391 U.S. 471 (1968) .....................................................................................................4

*Saunders v. Emory Healthcare, Inc.*,
    360 F. App'x 110 (11th Cir. Jan. 11, 2010) ..................................................................5

*W. Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.)*,
    473 F.2d 262 (9th Cir. 1973) .....................................................................................2, 3

Statutes, Rules and Regulations

26 U.S.C. § 165(g)(1) ..........................................................................................................1

26 U.S.C. § 597 ...................................................................................................................2

Treas. Reg. § 1.1502-19(c)(1) .............................................................................................2

Treas. Reg. § 1.1502-32(b) .................................................................................................4

Treas. Reg. § 1.1502-77(a) .................................................................................................2

Treas. Reg. § 1.1502-80(c) .................................................................................................1

Treas. Reg. § 1.597-4(g) .....................................................................................................5

Treas. Reg. § 301.6402-7 ...................................................................................................4

Page

Treas. Reg. § 301-9100-1 ........................................................................................................5

Treas. Reg. § 301-9100-3 ........................................................................................................5

Fed. R. Civ. P. 56(e) ...............................................................................................................5

## Other Authorities

Restatement (Third) of Agency, § 8.02, cmt. e ...................................................................2, 4

Restatement (Third) of Agency, § 8.01 ..................................................................................2

Defendant and claimant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully submits this response to the Notice of Supplemental Facts Concerning Motion for Summary Judgment Regarding Ownership of Tax Refunds (the "Notice") that was filed in these actions long after the close of briefing and only days before argument by The Colonial BancGroup, Inc. ("BancGroup") [Doc. Nos. 198, 55].  This response is submitted solely in the event that the Court determines to take the belated and unsubstantiated Notice into consideration in connection with the parties' pending summary judgment motions.  For the reasons set forth in the FDIC-Receiver's accompanying motion to strike, the Notice should be stricken and should not be considered.

The Notice acknowledges the weakness of BancGroup's claim to ownership of $253 million in federal income tax refunds that are in dispute by virtue of BancGroup's "debtor-creditor" argument, which is the only argument made in BancGroup's summary judgment filings.  As the FDIC-Receiver has shown, BancGroup does not obtain any ownership interest in tax refunds owned by Colonial Bank by virtue of BancGroup's role as agent for the affiliated group under regulations promulgated by the Internal Revenue Service ("IRS") or through an unsigned Intercorporate Tax Allocation Policy.  Having realized the flaws in its "debtor-creditor" argument, BancGroup belatedly argues in the Notice that it owns refunds due from the IRS to Colonial Bank based on a putative worthless stock loss deduction under section 165(g) of the Internal Revenue Code.[1]  There are several reasons why BancGroup's latest submission has no effect on the question of ownership.

---

[1] Section 165(g) of the Internal Revenue Code allows a taxpayer to claim a capital loss as of the last day of a tax year in which a security that is a capital asset becomes worthless.  *See* 26 U.S.C. § 165(g)(1).  Section 1.1502-80(c) of the Treasury Regulations provides that "stock of a member is not treated as worthless under section 165 before the stock is treated as disposed of under the principles of § 1.1502-19(c)(1)(iii)."  The failure of a bank subsidiary is not an event

*First*, the basis relied on by the IRS to pay tax refunds to an affiliated group does not determine ownership of those refunds among the members of the group.  *See* Treas. Reg. § 301.6402-7(j); *W. Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.)*, 473 F.2d 262, 264 (9th Cir. 1973).  Similarly, BancGroup's decision, as agent, to elect to claim the refunds based on BancGroup's alleged "worthless stock" deduction rather than the substantial net operating losses sustained by Colonial Bank does not affect that analysis.  Under either approach, BancGroup is still the "sole agent" for Colonial Bank under the consolidated return regulations, *see* Treas. Reg. § 1.1502-77(a)(4), and BancGroup therefore has a duty "to act loyally for" Colonial Bank's benefit and "not to acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of" Colonial Bank, *see* Restatement (Third) of Agency, §§ 8.01, 8.02; *Clay v. Cummins*, 77 So. 328, 329 (Ala. 1917) ("Loyalty to [the principal's] trust is the first duty which the agent owes to the principal.").

Courts have expressly rejected the argument that a common parent can use its position as agent to appropriate for itself an operating subsidiary's federal income tax refunds through the use of a putative worthless stock loss deduction.  *See Official Committee of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565 (2d Cir. 1991).  In *Prudential Lines*, a non-bankrupt parent corporation argued that it could use its worthless stock loss instead of its subsidiary's net operating losses to claim the benefit of NOL carryforwards because "the law of

---

that triggers worthlessness for this purpose because the failed bank still holds assets as of the end of the tax year (and in the case of Colonial Bank, the value of those remaining assets was substantial).  *See* Treas. Reg. § 1.1502-19(c)(1)(iii).  However, the same regulation permits a worthless stock loss at the time of deconsolidation of a subsidiary.  *See* Treas. Reg. § 1.1502-19(c)(1)(ii).  BancGroup's recent putative disaffiliation election under section 597 of the Internal Revenue Code was an attempt to invoke this provision.  *See* Treas. Reg. 1.597-4(g).  As will be discussed below in the text, BancGroup's disaffiliation notice was untimely and may be invalidated if the IRS determines that BancGroup's application for an extension of the deadline, which had expired, was based on material misstatements of fact.

2

consolidated tax returns gives it, and not [its bankrupt subsidiary], the right to use [the subsidiary's] NOL to offset income." *Id.* at 569.  Relying on *Bob Richards* and cases that have followed it, the Second Circuit rejected the parent corporation's argument and held that "a corporation does not lose any interest it had in the right to use its NOL to offset income because of its status in a group of affiliated corporations that file a consolidated tax return." *Id.* at 571 (collecting cases).

In this case, the following fundamental facts are undisputed:  (1) that the earnings history of Colonial Bank, not BancGroup, was the basis for all of the federal income taxes that BancGroup is seeking to recover from the IRS; (2) that Colonial Bank, not BancGroup, funded all of those tax payments; (3) that BancGroup did not pay any taxes during the relevant years because it experienced only losses; and (4) that BancGroup was reimbursed by the Bank for the use of its losses at the time that Colonial Bank funded the tax payments.  *See* FDIC-Receiver Statement of Facts, ¶¶ 20-27 [Doc. No. 111].  BancGroup also cannot dispute that if Colonial Bank were filing federal returns for itself and its own subsidiaries, the Bank subgroup would have more than sufficient operating losses to claim the full $253 million in available federal tax refunds without BancGroup's participation.  *See id.*, ¶ 25.

Given these undisputed and indisputable facts, BancGroup's belated decision to disaffiliate Colonial Bank from the group in order to trigger a worthless stock loss for itself cannot convert tax refunds that are the property of the principal – Colonial Bank – into the property of the Bank's agent BancGroup.  *See Capital Bancshares v. F.D.I.C.,* 957 F.2d 203, 208 (5th Cir. 1992) ("Bancshares showed only losses during the relevant period, and could not have generated any tax refund on its own.  To allow Bancshares to keep the refund generated by the Bank would unjustly enrich the parent."); *Cohen v. Un-Ltd. Holdings, Inc. (In re Nelco, Ltd.)*,

3

264 B.R. 790, 809-10 (Bankr. E.D. Va. 1999) ("a member of a consolidated group can participate in a tax refund only to the extent of tax payments made by that member"); *F.D.I.C. v. Brandt (In re Florida Park Banks, Inc.)*, 110 B.R. 986, 989 (Bankr. M.D. Fla. 1990) ("In this case, Park Bank could have generated the same tax refund with or without the use of the Debtor's losses. Under the *Bob Richards'* rationale, Park Bank would be entitled to the entire refund because Park Bank's losses are offset against its own income and to allow the Debtor a share of the refund would 'unjustly enrich' the Debtor since it paid none of the refunded taxes.").

Indeed, as agent BancGroup owes Colonial Bank the duties of a fiduciary. BancGroup's transparently self-interested and disloyal act in making a disaffiliation election in an attempt to advance its ownership arguments before this Court cannot, as a matter of law, alter the rights of the principal that is owed those duties – Colonial Bank. *See* Restatement (Third) of Agency, § 8.02, cmt. e (discussing remedies for unauthorized transactions in which agent obtains material benefit at the expense of his principal).[2]

*Second*, even if the reason for the IRS decision to pay tax refunds were relevant to the ownership question (which it is not), the FDIC-Receiver must still be found to be the owner of all of the pending refunds even after BancGroup's disaffiliation election. Under IRS regulations, the losses of a failed bank and its subsidiaries must be exhausted in recovering the federal tax refunds of the affiliated group before any losses of a parent holding company can even be

---

[2] The FDIC-Receiver never consented to BancGroup's actions and notified BancGroup of its objection before BancGroup made its disaffiliation election. *See* Notice of Filing Second Amendment to Proof of Claim, Exh. A (amendment to proof of claim filed on November 18, 2011), [Doc. No. 94 (0409 Action)]. Even if the disaffiliation election could alter the ownership analysis (which it does not), the FDIC-Receiver would still be entitled to the full $253 million either as Colonial Bank's share of refunds or as damages entitled to an administrative priority in BancGroup's bankruptcy case due to BancGroup's post-petition breach of its fiduciary duties. *See, e.g., Reading Co. v. Brown*, 391 U.S. 471, 482 (1968) (damages for debtor's post-petition tortious acts are granted administrative priority in bankruptcy). The FDIC-Receiver has asserted a protective claim against BancGroup to that effect. *See* Doc. No. 94 (0409 Action).

considered.  *See* Treas. Reg. § 301.6402-7(g)(iii); *see also* Treas. Reg. § 1.1502-32(b) (subsidiary results must be taken into account before determining amount of parent's worthless stock loss).[3]  In this case, the 2009 losses of Colonial Bank and its subsidiaries following BancGroup's attempted disaffiliation would be nearly $1.9 *billion*, which far exceeds the $755 million in losses that would be necessary to recover in full all available federal tax payments for the relevant years.  *See* Declaration of James Vordtriede dated January 17, 2011, ¶ 5 ("Vordtriede Declaration").  BancGroup's putative worthless stock loss would not be needed in any part to recover the entire amount of the federal tax refunds in dispute even if its disaffiliation election were relevant.  Colonial Bank would still be found to be the owner of all of the refunds.[4]

*Finally*, the IRS has informed the FDIC-Receiver that it would reverse the private letter ruling that BancGroup relied on to make its belated disaffiliation election if the IRS determines that the ruling was based on material misstatements of fact in BancGroup's application requesting that ruling.[5]  *See* Declaration of Rick Cywinski dated January 17, 2012, ¶ 3

---

[3] Courts confronting similar arguments from bankrupt holding companies have reached the same conclusion.  *See Capital Bancshares*, 957 F.2d at 208; *Florida Park Banks*, 110 B.R. at 989 ("both Park Bank and the Debtor have losses in 1985, each member should be entitled to recover only taxes it had previously paid.  Again, Park Bank would be entitled to the entire refund since only Park Bank paid the refunded taxes").

[4] BancGroup's unsubstantiated assertion in the Notice that Colonial Bank would have losses of $506,843,926 in a disaffiliation scenario is not supported by any affidavit or other admissible sworn statement and therefore must be disregarded.  *See* Fed. R. Civ. P. 56(e); *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 113 (11th Cir. Jan. 11, 2010).  In any event, as the Vordtriede Declaration makes clear, that figure understates the losses of the Colonial Bank subgroup by more than $1.3 *billion*.

[5] Under IRS regulations, the deadline for BancGroup to make the disaffiliation election was December 14, 2009.  *See* Treas. Reg. § 1.597-4(g)(5).  BancGroup did not make the election at issue until almost two years after that deadline, on November 23, 2011.  *See* BancGroup Surreply at 2.  BancGroup relies on the IRS private letter ruling for an extension of the long-ago expired regulatory deadline for making the election.  *See* Treas. Reg. §§ 301-9100-1, 301-

("Cywinski Declaration").[6]  In those circumstances, the allegedly new facts described in the Notice would be a nullity and the parties would be in the same factual posture as they were before BancGroup's untimely disaffiliation notice.

---

9100-3.  If the private letter ruling is reversed, then BancGroup's November 2011 disaffiliation notice will be untimely and of no effect.

[6] BancGroup mistakenly asserts that the FDIC-Receiver "appealed" from the private letter ruling.  *See* BancGroup Surreply at 2 n.1.  To the contrary, the FDIC-Receiver submitted a letter calling to the IRS's attention BancGroup's material misstatements of fact in its application and suggesting that the decision to grant BancGroup's extension request should be reversed for that reason.  *See* Cywinski Declaration, Exh. A (copy of FDIC letter).

6

## **CONCLUSION**

In the event that the Court does not grant the FDIC-Receiver's motion to strike BancGroup's Notice of Supplemental Facts Concerning Motion for Summary Judgment Regarding Ownership of Tax Refunds [Doc. Nos. 198, 55], the argument set forth in that Notice does not alter the conclusion that the FDIC-Receiver is the owner of all of the federal income tax refunds in dispute.

Dated:  Montgomery, Alabama
            January 17, 2012

      /s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.
Fritz Hughes & Hill, LLC
1784 Taliaferro Trail, Suite A
Montgomery, AL 36117
T: (334) 215-4422

    - and –

John J. Clarke, Jr.
Thomas R. Califano
Michael D. Hynes
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500

Attorneys for the
 Federal Deposit Insurance Corporation
 as Receiver for Colonial Bank

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies he is one of the attorneys for defendant FDIC-Receiver and that on January 17, 2012, a true and correct copy of the foregoing document was filed with this Court's ECF system in these actions, which will cause the electronic service of this document upon all persons registered in this action to receive CM/ECF notifications as of its filing to include the following:

Brent W. Herrin
Cohen Pollock Merlin & Small, P.C.
3350 Riverwood Parkway, Suite 1600
Atlanta, GA  30339

Peter E. Calamari
Kevin Reed
David L. Elsberg
Benjamin I. Finestone
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, NY 10010

Andrew P. Campbell
Caroline Smith Gidiere
Stephen D. Wadsworth
Leitman, Siegal, Payne & Campbell PC
420 N. 20th Street, Suite 2000
Birmingham, AL 35203

             /s/ Michael A. Fritz, Sr.
               Michael A. Fritz, Sr.